EMIL LEHNICK, Respondent, v. METROPOLITAN
STREET RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, June 4, 1906.**

APPELLATE PRACTICE: Setting Aside Verdict: Passion: Preju-
dice: Jury. Though the appellate court cannot interfere with
the verdict if the testimony is overwhelmingly against it, yet
if the court believes that the verdict was the result of passion
or prejudice and the instructions were disregarded, it is its
bounden duty to set aside the verdict.

Appeal from Jackson Circuit Court.—*Hon. William B.
Teasdale,* Judge.

REVERSED AND REMANDED.

*John H. Lucas* and *Chas. A. Loomis* for appellant.

(1) The testimony of the plaintiff did not show
that the jerk of the car was an extraordinary and unusual
one, attributable to a defect in the track, an imperfec-
tion in the car or apparatus, or to a dangerous rate of
speed or to an unskillful handling of the car by the grip-
man, and the court should have directed a verdict for
the defendant.   Bartley v. Railroad, 148 Mo. 141; Saxton
v. Railroad, 98 Mo. App. 494; Pryor v. Railroad, 85 Mo.
App. 378.   (2)   The verdict of the jury is so palpably
against the great weight of the evidence, and substan-
tially all of the evidence in the case, as to raise the pre-
sumption that it was the result of passion and prejudice
and should not be permitted by the court to stand.   Zur-
retts v. Greenwell, 92 Mo. 120; Chouquette v. Railroad,
152 Mo. 257; Zoye v. Trawich, 94 Mo. App. 307; Cooper
v. Railroad, 94 Mo. App. 417; Meier v. Railroad, 81 Mo.
App. 410; Kennedy v. Transit Co., 103 Mo. 1.

*T. J. Madden* and *Bird & Pope* for respondent.

(1)    The plaintiff made a case for the jury and the peremptory instruction requested by the defendant was properly refused.    (2)    But a reading of the record will at once show that the plaintiff clearly proved that he was thrown off of the car by one of those unusual, extraordinary and unnecessary jerks that by its mere happening speaks of the negligence of the defendant. Hite v. Railroad, 130 Mo. 138; Bartley v. Railroad, 148 Mo. 140; Dougherty v. Railroad, 81 Mo. 325; Dorsey v. Railroad, 83 Mo. App. 528, 543; Lynn v. Railroad. 103 Cal. 7; 5 Am. and Eng. Ency. Law (2 Ed.), 625; Magrane v. Railroad, — Mo. —, 81 S. W. 1158; Clark v. Railroad, 127 Mo. 197; Wilkerson v. Railroad, 26 Mo. App. 144; Dimmit v. Railroad, 40 Mo. App. 655; Gannon v. Gas Light Co., 145 Mo. 502; Norton v. Railroad, 40 Mo. App. 645; Minster v. Railroad, 53 Mo. App. 276; Hunt v. Railroad, 14 Mo. App. 160; 2 Thomp., Trials, sec. 1692.

BROADDUS, P. J.—The plaintiff for his cause of action alleges: "That on or about December 13, 1901, at 6:41 a. m., he boarded, as a passenger, one of defendant's cable cars going west at Twelfth and Main streets; that the travel on said line at that hour of the day was always heavy, which was a fact well known to defendant; and that defendant carelessly and negligently, and in disregard of its duty to properly provide for the travel on its said line, was, at and about said time, operating such few trains over its said line that each of its trains and the platforms thereof were greatly overcrowded, and plaintiff was compelled to take passage . . . on a greatly overcrowded . . . train of defendant, and was compelled to stand on the platform of said train . . . as its overcrowded condition prevented him from taking a seat inside the car; that when said train had gone about one hundred feet

it gave a sudden jerk of unusual and extraordinary vio-
lence, and plaintiff, who was on the platform of said
train, was by reason of said jerk and the crowding con-
dition upon him of other passengers, thrown backwards
from said car, striking the ground or pavement," where-
by he was greatly injured. The answer is a general de-
nial and plea of contributory negligence.

The cable car in question was being operated west
along Twelfth street. After passing over Main street it
stopped to let off and take on passengers. Plaintiff
stated that he went aboard at that point but was unable
to get inside the car by reason of its overcrowded con-
dition; that he took a position on the platform of the
front car, which was also overcrowded; and that he was
standing with his back against the car holding with his
left hand to a bar, when the car gave a jerk which caused
other passengers to fall against him, and he was thereby
knocked off onto the street and injured. From Main
street west there is an upward grade. Plaintiff stated
that the jerk which caused him to be knocked off the
car was of great violence and was unusual. One other
witness, Carrie Gebhart, testified that the jerk was of
great violence and unusual, and such as she had never
observed before on the cable cars. Other witnesses, who
were passengers on the platform at the time, were intro-
duced by defendant and stated that the jerk was not un-
usual. George Ham, who had been a gripman on defend-
ant's cable cars, explained that jerks were unavoidable
in the operation of said cars, owing to the fact that they
could not be operated with taut cables, but must be op-
erated with the cable in a loose condition; that the jerks
mentioned were the result of the cars, after starting
from a given point, taking up the slack in the cable; and
that after the grip which attached the car to the cable
is applied by the operator the speed of the car is greater
than that of the cable, and that in adjusting itself to
the speed of the cable, there being a slack in the latter,

the former is caused to lurch, which produces the jerk. He stated that severe and unusual jerks could be avoided by the gripman loosening the grip on the car until the slack in the cable was taken up. Besides the passengers on the platform, defendant's operators testified that there was no unusual jerk at the time, and such as occurred was unavoidable. Five witnesses who lived in the city, and who were on the platform, testified that plaintiff was knocked or thrown from the platform. Their testimony is to the effect that he was trying to get upon the platform while the car was in motion when he fell. One of them stated that plaintiff attempted to jump upon the platform and in doing so fell off, and that he (witness) attempted to reach him with his hand to get him on the platform but he was unable to do so.

The plaintiff's injury occurred at about 6:40 a. m. It was shown that about that hour, and the corresponding hour in the afternoon of each day, the travel over defendant's said line of cable road was heavy and that the cars were greatly crowded. The testimony of the witnesses varies slightly as to the usual length of time between the passing of the different cars at the time of day mentioned. Some stated that it was from four to five minutes; but according to Carter, the superintendent, the schedule time was two and one-half minutes.

The finding and judgment were for the plaintiff and the defendant appealed.

The plaintiff alone testified that he was a passenger on the car in question and that he was knocked off by persons falling against him as the result of a violent and unusual jerk of the car. He, however, contends that he is supported by the evidence of the gripman, who testified that when he started his train there were no passengers on the sidewalk or on the street there ready to get on the car, and he looked back, and there was no one running towards the car or going to get on the car when he started; and by the evidence of the conductor to the same effect. This evidence only goes to show

that plaintiff, if he was standing at the Main street crossing, must have got on the car at that point. But it does not show that he was at said crossing, and therefore does not prove that he got on there. Plaintiff's evidence, as well as that of defendant, shows that he was injured near the alley west and some distance, about the length of half a block, from said crossing. The evidence in that respect does not prove anything. He was first seen running and attempting to get on the car while near said alley according to the evidence of all the witnesses, who testified concerning the manner in which, and the place where, he was injured. If he was injured in attempting to get on the car at or near the alley, it was not necessary for him to have been at the street crossing when the car started. It is true he is corroborated by the policeman, who was with him, as to the fact that he got off the Roanoke car at Twelfth street, but that does not prove that be remained there until the Twelfth street car arrived, stopped and started again.

Five witnesses testified that he was not a passenger on the car at all, but that he fell and was injured in attempting to board the car while it was in motion. The reputation for truth of these witnesses was not impugned. And we can conceive of no motive which would induce them to commit so glaring a perjury as they must have done if their statements were untrue. Such a conclusion does violence to any sort of faith in the truth of human testimony. Observation teaches us that men are swayed from the truth by motives, such as gain, passion or prejudice, but in the absence of such motives the law presumes that the witness speaks the truth. If plaintiff was on trial for perjury by reason of his sworn testimony in this case, the evidence of the counter testimony introduced by the defendant would be sufficient to predicate a verdict of guilty by a jury, and that would be upheld by the courts as sufficiently established by the evidence.

Speaking for myself, I feel impelled to the belief that although plaintiff was seriously injured at the time and place alleged, the manner in which he was injured was an afterthought and that he comes into court upon testimony, so far as he himself is concerned, that has been invented by himself. And how any fair-minded jury could have come to the conclusion that the jury did, is incredible unless we account for it on the ground that they were influenced by passion and prejudice and wholly ignored the instructions of the court.

That the testimony was overwhelmingly against plaintiff cannot be truthfully denied. But it is conceded that under our practice, for that reason alone, this court would not be justified in interfering with the verdict of the jury. But, if the court believes, and such a belief is unavoidable, that the verdict of the jury was the result of passion or prejudice and that the instructions of the court were disregarded by the jury, it is our bounden duty to set it aside. That we have the authority to do so is unquestionable. In Spohn v. Railroad, 87 Mo. l. c. 84, the court says: "We recognize and affirm the right of the jury to determine for themselves the weight of evidence and the credibility of witnesses. Trial courts may justly and rightfully award new trials, where this court cannot, and has no right to say it was error not so to do. . . . Reluctant as we are, and should be, to interfere in such matters, as this record now stands, we can come to no other conclusion than this, that the verdict is the result of passion or prejudice, or that the instructions were wholly disregarded." And where the preponderance of the evidence against the verdict is so strong as to raise a presumption of prejudice, corruption, or gross negligence on the part of the jury, the appellate court has the right to interfere with such verdict. [Price v. Evans, 49 Mo. 396.]

The Supreme Court, in construing the constitutional right of trial by jury, in speaking of the duty

of the trial courts to grant new trials where verdicts are not supported by the evidence, or when the verdict is arbitrary or manifestly and clearly wrong, or when injustice has been done, and citing a number of Missouri cases, said that the Supreme Court by virtue of its superintending control over circuit courts, as provided by article 6, section 3, of the Constitution, has the authority to set aside verdicts for the causes enumerated. And the court further said: "So that it may now be conceded settled law in this State, that the trial by jury 'as heretofore enjoyed' does not imply that the verdict of a jury on an issue of fact is sacred or conclusive beyond the controlling power of the trial court, or even of this court when the trial court fails to do its duty in not preventing an injustice. Courts are constituted to mete out justice, and no other consideration should control their actions and no traditions or theories should be allowed to intervene to prevent that purpose, for the duty is charged upon the court to examine the record and award a new trial, reverse or affirm the judgment or decision of the circuit court," etc., quoting section 2304, Revised Statutes 1889, now section 866, Revised Statutes 1899.

We held in a former opinion that the court committed error in refusing the defendant's demurrer to the plaintiff's case. The plaintiff filed a motion for rehearing, which was granted in order that the case might be more thoroughly considered. After having done so, we are of the opinion that the court was in error in not sustaining defendant's motion for a new trial. The cause is reversed and remanded. All concur.