ELIZABETH PICKENS, Respondent, v. METRO-POLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 20, 1907.

1 APPELLATE PRACTICE: Evidence: Prejudice: Jury. Appellate courts do not weigh evidence where there is a substantial conflict, nor do they judge the credibility of witnesses; but they possess the power to scrutinize evidence to determine whether it raises a debatable issue in the solution of which there is room for reasonable minds to differ. The jury has no office to perform until the evidence raises an issue of fact; and where the judgment is the result of improper motive the appellate courts impose a restraining hand to prevent the accomplishment of flagrant wrong.

2  **PASSENGER CARRIERS: Alighting: Evidence: Physical Facts.**
On a review of the evidence it is held plaintiff's testimony is
not contradicted by the physical facts but rather strengthened
thereby; and the physical facts do not speak in such one-sided
tones as to take the case from the jury.

3.  ——: ——: ——. Evidence relating to the issue wheth-
er plaintiff stepped directly forward from the step of a slowly
and smoothly running car or was thrown from the step by a
sudden jerk of the car, is reviewed and held properly sent to
the jury.

4.  **EVIDENCE: Weight of: Witnesses.** The strength of evidence
is not measured solely by the number of witnesses and the fal-
libility of human testimony is so universally recognized that
courts and juries attach greater importance to indisputable
physical facts than to contradictory testimony of witnesses
however disinterested they may appear.

Appeal from Jackson Circuit Court.—*Hon. James H.
Slover,* Judge.

AFFIRMED.

· *John H. Lucas, Frank G. Johnson* and *Ben F.
White* for appellant.

(1)  The court erred in not giving the peremptory
instruction as requested by defendant at the close of
the testimony. The proof was overwhelming that plain-
tiff attempted to alight from the car before it had
stopped — before, in fact, it had reached its stopping
place, and under these circumstances this was such con-
tributory negligence as to prevent a recovery. (2)
The amount of the verdict, and the fact that it was
for plaintiff at all, with the testimony so overwhelm-
ingly against her, shows that the jury were influenced
by passion and prejudice. Kennedy v. Transit Co., 103
Mo. App. 1; Garrett v. Greenwell, 92 Mo. 125; Whitsett
v. Ransom, 79 Mo. 258; Bank v. Wood, 124 Mo. 72;
Norris v. Whyte, 158 Mo. 20; Chitty v. Railroad, 148
Mo. 64; Spiro v. Transit Co., 102 Mo. App. 250; Spohn
v. Railroad, 87 Mo. 74; State v. Fannin, 158 Mo. 149;
Payne v. Railroad, 136 Mo. 362; Hook v. Railroad, 162

Mo. 569; Nugent v. Milling Co., 131 Mo. 241; Lehnick
v. Railroad, 94 S. W. 996.

*Reed, Yates, Mastin & Howell,* for respondent, filed
argument.

JOHNSON, J.—Plaintiff was injured as the result
of an attempt to alight from an electric car operated
by defendant on its Fifteenth street line of street rail-
way in Kansas City, and sues to recover damages on
the charge that her injury was directly caused by the
negligence of defendant. She recovered judgment in the
sum of three thousand dollars and the cause is here
on defendant's appeal. Defendant presents but one
ground for a reversal of the judgment — that the court
erred in refusing its request for an instruction directing
a verdict in its favor, and, in support thereof, argues
that the judgment is based solely on the unsupported
testimony of plaintiff, who is contradicted, not only by
the testimony of a large number of witnesses — many
of whom it is claimed were disinterested — but also by
the conceded physical facts of the occurrence.

The negligence alleged in the petition is "that
when said car reached the said intersection of said
streets (Fifteenth and Spruce), it stopped, or almost
stopped, and thereupon plaintiff attempted to alight
therefrom and before she had a reasonable time in which
to alight therefrom, defendant by its agents and serv-
ants in charge of said car carelessly and negligently
started the same forward in such manner that the
plaintiff was thrown from said car and upon the pave-
ment of the street and thrown in such manner that she
fell backward and underneath the trucks and wheels
of a 'trailer car' which was attached to the rear end
of the car in which plaintiff was riding, and thereby
sustained severe bodily injuries." The answer, in addi-
tion to a general denial, contains a plea of contributory
negligence.

Plaintiff, at the time of her injury, was fifty years of age, quite heavy, and not very active. She was a seamstress and lived at the northwest corner of Fifteenth street and Spruce avenue. She had been sewing at a residence near Tenth and Holmes streets during the day of January 24, 1905, and at about 6:30 in the evening, boarded a Brooklyn avenue car to go home, paid her fare, received a transfer and, at the junction, changed to a train, consisting of a coach and trailer, east-bound on the Fifteenth street line. Plaintiff seated herself in the central part of the coach, and, at the proper time, signalled the conductor to stop at Spruce avenue, a regular stopping place. The course of this avenue is north and south but at its intersection of Fifteenth street there is a break in its continuity, the east line of south Spruce avenue being a prolongation of its west line north of Fifteenth street. Thus far, the testimony of all of the witnesses is in accord. There is a conflict over the location of the regular stopping place for east-bound trains, the witnesses for plaintiff asserting that it is at the west line of north Spruce avenue, while those for defendant place it at the east line of that street — a difference of some fifty feet.

Plaintiff testifies that in response to her signal, the train was brought to a standstill at the regular stopping place, that she waited for it to stop before rising from her seat, then walked to the rear, proceeded down the steps, and was in the act of stepping to the street when the car was suddenly started, causing her to fall. She was facing south at the time, and was holding with her right hand to the handhold provided for the use of passengers. When the car started, she did not release her grasp but held on in a vain effort to recover her balance, was dragged perhaps twenty feet before releasing her hold, and was thrown so near the track that she fell in the way of the advancing trailer and was caught by some part of that car and rolled over and

over until the train came to a stop. Immediately after she lost her balance on the step, an emergency signal was given and the train was stopped, but not until she had been dragged and rolled as stated.

On the part of defendant, the evidence tends to show an entirely different state of facts. The witnesses say that when the signal to stop was received, the motorman reduced speed for the purpose of stopping at the east line of north Spruce avenue, and that the car was running at, approximately, two or three miles per hour when it crossed the west line of that street, that plaintiff arose from her seat and proceeded to the rear vestibule before the west line was reached and, at that point, against the warning of the conductor, suddenly proceeded down the steps and attempted to step straight ahead to the pavement, and fell. The conductor who was in the rear vestibule, but not near enough to restrain plaintiff, as soon as he perceived from the awkward manner in which she was attempting to alight that a misadventure was inevitable, gave the emergency signal, and the car came to a full stop, some five or six feet from the place of her fall. All of the witnesses for defendant deny that plaintiff was dragged, and state that when the train stopped, she was found lying under the running board of the trailer, next to the forward wheels. It appears that plaintiff was wearing a heavy coat and woolen dress, both of which were badly torn and thoroughly begrimed, and on being undressed after the injury, her corset stays were found to be much bent and one of them was broken.

The nature of plaintiff's injuries is thus described by one of her physicians: "Q. You may state to the jury in your own way just what you found her condition to be at that time (about one week after the injury). A. Well, I found her confined to her bed, suffering a great deal of pain, and generally bruised up all over; a severe bruise on both right and left sides of the chest,

125 App.—43

and on the right hip; a very badly bruised and dislocated ankle — the left ankle, I believe. I examined her in company with Dr. McVeigh and found the chest very tender on both sides, especially the left side, and one or two fractured ribs on the left side, and the left ankle had been dislocated and was very badly swollen and discolored and very painful."

In our consideration of the evidence before us, the principles by which we shall be guided are too well settled to be regarded as a subject of controversy. As an appellate tribunal, we begin with the presumption that the jury and the trial judge who possessed a supervisory control over the verdict, properly discharged their respective duties with reference to the weighing of the evidence, and that the judgment is the product neither of passion nor prejudice on the part of the jury, nor or a lack of care or sound judgment on the part of the judge. We repeat what has been so often said, that appellate courts do not weigh evidence where there is a substantial conflict, nor do they judge of the credibility of witnesses. The law does not invest them with the right nor charge them with the duty of performing the functions of the triers of fact, and any assumption of such authority would constitute an invasion of ground beyond their domain. But this does not mean that appellate courts are devoid of the right to scrutinize the evidence and to determine whether that which is said to support the judgment is endowed with enough strength to raise a debatable issue in the solution of which there is room for reasonable minds to differ. Until evidence is introduced by the party on whom rests the burden of proof, of character and sufficient strength to support the elemental facts asserted by him, the jury has no function to perform, since their duty is confined to the solution of questions of fact, and it always is within the province of the reviewing court to determine, as a question of law, whether the evidence

offered has enough probative strength to present real issues of fact which may be honestly settled either way by a jury of reasonable men. Where the court finds the evidence supporting the judgment possesses substance, it does not weigh it in the balance with that opposed to it, but accepts the judgment of the triers of fact as a final adjudication of the issues which, under the law, they must decide. But where the supporting evidence lacks value, either because it fails to measure to the standard of the rules of evidence, or is opposed by evidence of such overwhelming strength and verity that it is too weak to raise an issue, the appellate court, as a matter of law, should brush it aside, and, regarding the judgment as the offspring not of a fair and impartial effort on the part of the judge and jury to discharge their duties, but of an improper motive, interpose the restraining hand to prevent the accomplishment of flagrant wrong. Thus, recently, in the case of Lehnick v. Railway, 118 Mo. App. 611, the judgment was supported by no other evidence than the testimony of the plaintiff himself. Opposed to it was the testimony of five witnesses of unimpeached veracity, most of whom were disinterested and whose situation at the time of the injury was such that they could not have been honestly mistaken. In the opinion written by Judge Broaddus, we expressed the conviction that the judgment could not have been the result of an honest endeavor to arrive at the truth and to do justice, but was the work of passion or prejudice, and declared that "where the preponderance of the evidence against the verdict is so strong as to raise a presumption of prejudice, corruption, or gross negligence on the part of the jury, the appellate court has the right to interfere with such verdict." And it has been held a number of times that where the judgment is founded on testimony of witnesses so at war with the indisputable physical facts of the situation as to be in the highest

degree improbable, courts will not stultify themselves by saying that such worthless testimony is worthy of consideration, but will treat it as though it had not been uttered.

With these principles in mind, we turn to the record before us to ascertain whether the judgment is sustained by substantial evidence. It is conceded plaintiff was a passenger on defendant's car; that she signalled for the car to stop at the regular stopping place, and that the car did stop for the purpose of affording her an opportunity to alight. The location of the regular station is in dispute, but on that issue, plaintiff presented an array of witnesses and of facts and circumstances quite as formidable as that offered by defendant, and we will dismiss this issue by saying that its solution was purely a question of fact and, therefore, belonged exclusively to the jury, and, as they found that the stopping place of the car was at the west line of Spruce avenue, and that it did come to a full stop at that point, we will treat those facts as established.

The important question is whether plaintiff attempted to step from a stationary car and was thrown down by the sudden starting thereof and dragged, as she contends, or attempted to alight from it while it was moving at an appreciable rate of speed and received her fall in consequence of the peculiar manner of her act. On this issue, she is supported by no other witness and is contradicted by some seven witnesses introduced by defendant. Counsel for defendant earnestly argue that she is further contradicted by the conceded physical facts, and we will dispose of this last contention before we address ourselves to the subject of the conflict between the witnesses.

Instead of being overwhelmed by the physical facts and circumstances disclosed, we are of opinion that her account of the injury is strongly supported by them. The deductions drawn by counsel for defendant from the

fact that when she was rescued from underneath the trailer, plaintiff was lying with her head toward the southeast, are not of that indisputable character to compel their acceptance by all reasonable minds. Counsel assume that her position necessarily indicated the direction of her fall and that if she fell toward the southeast, she must have been stepping from a moving car, and could not have been thrown by a sudden start, since the effect of such motion would have been to pitch her body backward. These conclusions are not even reasonable. Considering the character and extent of the damage wrought to her clothing and the nature of her injuries, it is not believable that the position of her body was not shifted after her fall to the pavement, and we are of opinion that her position when found afforded no indication of the direction of her fall. And if it appeared—as it does not—that she fell to the pavement in the manner claimed by defendant, that fact would not necessarily show that she must have stepped from a smoothly moving car and not from one suddenly started forward. The direction of her fall, doubtless, was influenced by three opposing forces: The eastward motion she derived from the car, her southward motion in attempting to step from it, and the resistance offered by her attachment to the handhold which certainly could have greatly influenced the direction and nature of the fall. As we observed in Lang v. Railway, 115 Mo. App. 489, "so frequently do unlooked for results attend the meeting of interacting forces that courts, in such cases, should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other." Under the conditions before us, we cannot say, as a matter of law, that plaintiff would have fallen in any given direction in either state of facts described.

On the other hand, the facts that plaintiff's heavy

clothing was torn in many places and ingrained with dirt, and that she was so generally bruised and injured in so many places, are inconsistent with the assertion that she attempted to step to the street while the car was moving very slowly, and fell clear of the car without being dragged. Some of the witnesses for defendant fix the rate of speed at which the car was going at two or three miles per hour, but all of them agree that the car was stopped in from five to eight feet from the place where she fell, so that in that distance, the conductor had time to give the emergency signal and the motorman to receive it and make the stop. One of defendants witnesses testified: "Q. The car must have been nearly stopped when she stepped off? A. Yes, sir, nearly stopped. Q. Almost to a stop? A. Yes, sir." Another said: "The car only ran five feet after she stepped off. In that time I observed she fell to the ground." "Q. Although it only went five feet after that? A. The car was moving very slow." Another that "the car did not move more than five feet after she stepped off. The car was gradually slowing up, running very smooth, and I believe the woman thought that the car had stopped."

It is hard to believe that the act of stepping from a car which was moving so slowly could have produced so many manifestations of rough usage by some violent, powerful and continuous force. It is more reasonable to conclude that plaintiff was dragged, rolled, and pushed as she says she was. Supported as she is by this, the strongest kind of evidence, the fact that she is contradicted by seven witnesses does not deprive her testimony of evidentiary substance. Aided by physical facts which not only support her but strongly tend to impeach the credibility of defendant's witnesses, an issue of fact was raised which the learned trial judge rightly sent to the jury. He should not have done otherwise had all of defendant's witnesses appeared to be persons wholly dis-

interested and of unimpeachable veracity. The strength of evidence is not measured solely by the number of witnesses by whom it is given, and the fallibility of human testimony, be the witness never so honest and sincere, is so universally recognized that courts and juries attach greater importance to indisputable physical facts than they do to contradictory testimony from witnesses, however disinterested they may appear to be.

And, further, we may add that none of the seven eye-witnesses introduced by defendant appears to have been wholly free from bias or prejudice. Aside from the fact that they contradicted each other relative to important particulars, the cross-examination of each developed facts and circumstances which tended to impugn the honesty of the witness and thus to discredit his testimony. We do not deem it necessary to recount the facts but content ourselves by saying that we are impressed from a careful analysis of the evidence that the question of the credibility of all of the witnesses for defendant was an issue of fact no less vital than the issues about which they testified and that the settlement of all these controversies belonged exclusively to the triers of fact. The situation is entirely different from that we encountered in the Lehnick case where the plaintiff was unsupported by the physical facts and was contradicted by witnesses against whose credibility there was no fact nor circumstance, while here, plaintiff is sustained by the physical facts and the opposing testimony is delivered by witnesses no one of whom can be said to have been surrounded by an atmosphere of impeccability.

The judgment is affirmed. All concur.