MAGGIE L. McPHERSON, Respondent, v. PERCY L.
BRISTOL, Appellant.

### Kansas City Court of Appeals, June 8, 1908.

**TRIAL AND APPELLATE PRACTICE:** Conflicting Evidence:
Weak Case: Verdict.   Where the evidence presents a sub-
tantial issue which is submitted by proper instructions, the
verdict must stand, and it is only where the evidence of the
party having the burden of proof is inherently too weak to
support the issue or make an impression on the reasonable
mind, that the appellate court will overturn the verdict.

Appeal from Buchanan Circuit Court.—*Hon. Chesley
A. Mosman,* Judge.

AFFIRMED.

*Vinton Pike* for appellant.

(1)   All the evidence relating to the conduct of
both parties agrees with defendant's testimony, and the
renunciation of plaintiff on February 16th.   Two cir-
cumstances are very persuasive:   First:  Failure to
produce Mrs. Lesley in corroboration of the pretended
meeting of the three on February 20th.   Second: Fail-
ure to produce the notes and mortgage plaintiff pre-
tends defendant handed her attorney to be executed by
her.   It was in plaintiff's power to produce this evi-
dence.   Gulf, etc., v. Ellis, 54 Fed. 483.   (2)  The ver-
dict demonstrates that the jury ignored the instructions
and disregarded the evidence, and cannot be reconciled
with an honest and intelligent discharge of duty.   Leh-
nick v. Railroad, 118 Mo. App. 611; Spohn v. Railroad,
87 Mo. 84; Price v. Evans, 49 Mo. 396; Bowlin v. Rail-
road, 125 Mo. App. 423; Planters, etc., v. Tel. Co., 55
S. E. (Ga.) 495, note; 6 L. R. A. (N. S.) 1180.

*Mytton & Parkinson* and *Chas. C. Crow* for respondent.

(1)     Respondent made a prima-facie case which was disputed by appellant and his witnesses, the jury finding in favor of respondent and there being no error in the instructions there is no question before this court for review.

JOHNSON, J.—Plaintiff sues to recover $200 she paid to defendant as earnest money under contract for the sale of real property, alleging in her petition that defendant refused to perform the contract.     Defendant answered with a general denial and filed a counterclaim for $2,400 the amount of damages he states he sustained in consequence of plaintiff's breach of contract.     Verdict and judgment were for plaintiff for the full amount of the demand and the cause is here on the appeal of defendant.

At the time the contract was made, plaintiff was living in Denver, Colorado, and defendant in St. Joseph, where the property is situated.     First plaintiff wrote defendant asking him to rent the premises to her.     He replied by letter saying that as he had a good tenant, he would not rent the property to plaintiff but would sell it to her for $6,000 on five years credit, the purchase price to be divided into monthly instalments and secured by deed of trust on the property.     Plaintiff in answer asked for further information and defendant replied stating the terms of sale as follows:     "I will furnish you a full and complete abstract of title from the government down to me.     There is no mortgage on the place and the taxes are all paid up to date. . . .     I want you to pay $200 down and you will not have to pay any more until the first note becomes due, which will be the third month from the date of purchase.     In addition to the $200 cash you give me fifty-eight notes for $100 each. These notes will be numbered one, two, three and so on

up to fifty-eight, and the notes will be paid as follows: Note No. 1 to be paid three months from date of purchase, number 2 in four months, number 3 to be paid in five months from date of purchase, and so on until they are all paid. . . . The day that you buy the place and pay the $200, I will give you a warranty deed for the place and you will sign a mortgage on the property for $5,800. . . . You will not have to pay me any interest, but you will have to pay the taxes, and I will pay the insurance. . . . You ask when you can get the house. As soon as you pay the $200, I will give the lady notice to vacate the house. You know I have to give her thirty days' notice and if you are in a hurry, you can send me New York draft, or certified check for $200, and I will mail you receipt for it to apply on payment for property No. 717 South 5th street, and I will then give the tenant a written notice to vacate."

This letter was dated January 19, 1905, and under date of January 26th, plaintiff replied: "I accept the proposition contained therein (referring to defendant's letter) to purchase the property No. 717 South Fifth street for $6,000. . . . I enclose you herein New York draft for $200, which is the payment required by your letter, in order to give the party notice to vacate the house, and which shall constitute the first two payments. Will you be kind enough to at once give the tenant notice to vacate the house by the first of March, so that I may have the possession of the property on that date, on which date, of course, the payments begin. I expect to be in St. Joe somewhere about the 15th or 20th of February. In the meantime you may have the papers prepared for my signature, together with an abstract of the property, of course, the understanding being that the notes which I am to sign are to bear no interest. Your letter of the 19th seems to be clear to me, and I desire to follow that understanding in every particular." Defendant acknowledged receipt of the re-

mittance and stated he would notify tenants of the sale of the property, and request them to vacate by March 1st." Later, he wrote that the tenant did not wish to move but offered to buy the property and he found he could not get possession before March 15th. Plaintiff arrived in St. Joseph before this letter reached her and what afterwards took place in the only subject of dispute between the parties. Plaintiff testified she had several conversations with defendant, some by telephone, others at personal interviews. At all of them she expressed her readiness to complete the contract and her desire to obtain possession of the property as speedily as possible, but defendant put her off on the excuse that he could not get possession and would not deliver the deed until he had possession. The tenant was present at one of these conversations and declared she would not vacate because she "had made a good many improvements on the premises under an agreement with him (defendant) that he would not sell the premises to anyone unless he had first given her an opportunity to buy the same," and she accused defendant of using plaintiff as a cat's paw to get more money out of her. Defendant telephoned plaintiff on the 14th day of March that he could not carry out his part of the agreement and added if she would come to his office he would pay her back the $200. Plaintiff replied that owing to another engagement she could not come that morning, whereupon defendant told her that if she failed to appear by 11 o'clock he would not repay her at all.

Defendant's version of the affair is entirely different. He testified, in effect, that with all possible speed he proceeded to cause his tenant to vacate; that when plaintiff came to St. Joseph, she inquired of the chief of police if she would be permitted to conduct a house of prostitution on the premises and being assured that permission would not be given, then refused to go on with the purchase and asked defendant to refund

her down payment which he declined to do.    This testimony is supported by five other witnesses including the chief of police and another police officer.    The court, in the instructions given, submitted the issues of fact thus raised to the jury and as we view the evidence, we must hold that the verdict is sustained by substantial evidence.    It is true plaintiff is unsupported by any other witness, but there is enough in the conceded facts and circumstances to lead a reasonable person to believe she told the truth, and we think a substantial issue was presented for the jury to solve.    This is not a case for the application of the rule followed in Lehnick v. Railroad, 118 Mo. App. 611.    That rule should be invoked only in cases where the evidence of the party having the burden of proof is inherently too weak to support the issue or to make any impression on a reasonable mind.    It should not be applied in cases where the testimony of the witness, though contradicted by that of many witnesses, nevertheless possesses probative strength, either from the fact that it is supported by the conceded facts and circumstances of the case, or is given in a manner to impress a reasonable person with the credibility and sincerity of the witness.    [Pickens v. Railway, 125 Mo. App. 669.]

The judgment is affirmed.    All concur.