LEWIS MIDDLETON, Appellant, v. ST. JOSEPH RAILWAY, LIGHT, HEAT & POWER COMPANY, Respondent.

Kansas City Court. of Appeals, May 21, 1917.

1. **NEGLIGENCE: Street Railways: Sudden Jerk of Car.** The plaintiff, while in the act of alighting from the defendant's street car, was thrown therefrom by a sudden jerk of the car and was injured. He was standing on the running board of the street car with his right foot suspended over the street, but not holding to the car with his hands, and just as his right foot was about to touch the ground the car jerked forward, so that his right foot, touching ground, acted as a pivot, causing him to spin around and fall backward with his head in the direction the car was going striking the pavement on his back and side.  *Held*, that the cases of Scroggens v. Railway, 138 Mo. App. 215 and Daniels v. Railway, 177 Mo. App. 215, in which is set out the doctrine relating to falls from a street car against the natural law of force and gravity, does not apply in this case.  The appellate courts have carefully refrained from extending the rule in these two cases.

2. ——: ——: ——. There is no arbitrary doctrine that can be laid down by appellate court stating that a human body may be projected in any given direction, when the court is not in a position to know of the intensity or suddenness of the jerk of the car, or of the quality of the other forces that were brought into play at the time.

Appeal from Buchanan Circuit Court.—*Hon. Charles H. Mayer*, Judge.

REVERSED AND REMANDED.

*Mytton & Parkinson* for appellant.

*Robert A. Brown* for respondent.

BLAND, J.—On September 6, 1916, plaintiff was a passenger on one of defendant's north bound cars, it being an open car with the running board running lengthwise on the outside of the seats. Plaintiff in the act of alighting from the car was standing on the outside running board facing in the direction the car was going. The car had stopped for the purpose of taking on and letting off passengers.

From plaintiff's testimony we gather that he was injured as follows: He was standing on the running board of the stationary car, but not holding to the car with his hands, with his right foot suspended over the street preparatory to his getting off. Just as his right foot was about to touch the ground, but prior to its so doing, the car jerked forward, unbalancing him so that his right foot immediately struck the pavement, his left foot remaining on the running board. His right foot on the ground acting as a pivot, the forward motion of the car tending to carry his body forward, turned him around in a semi-circle and caused him to fall backward with his head in the direction the car was going, striking the pavement on his back and right side. The court sustained a demurrer to the evidence on the ground that the way in which plaintiff claimed he was injured was contrary to physical or natural laws.

In asking that the judgment of the lower court be affirmed respondent cites the cases of Scroggins v. Railway, 138 Mo. App. 215, and Daniels v. Railway, 177 Mo. App. 280.

In the Scroggins case a negro woman was proceeding down the step of a stationary car and was in the act of stepping from the last step to the street but not holding to the car, when the car started forward sud-

denly throwing her on the pavement lengthwise of the
car. She claimed that her head fell in the direction the
car was going. In the opinion in that case it is stated
that the evidence was that there were no counter-
acting forces sufficient to overcome the natural ten-
dency of her body to fall with her head to the rear
of the car and her feet toward the front, and this
court refused plaintiff the right to recover for the
reason that in claiming that she fell with her head
toward the front of the car she was contending for
something against natural laws. In the case of Dan-
iels v. Railway, supra, plaintiff had boarded a car
and had gotten upon the step and was reaching for
the handhold, but before he got hold of it the car
suddenly started forward, throwing him lengthwise
of the car on the street. Plaintiff claimed that he
fell onto the street with his head in the direction the
car was going. In the Daniels case the court like-
wise said that there were no counteracting forces
sufficient to overcome the natural tendency of Daniel's
body to fall with his feet in the direction the car was
going and his head in the opposite direction, and on
the authority of the Scroggins case, supra, reversed
the judgment.

We do not believe the facts in this case are similar
to the ones in the Scroggins and Daniels cases. We
see nothing contrary to physical or natural laws in
plaintiff's story to the effect that his right foot was
suspended over the street and the jerk of the car
caused it to hit the street and unbalance him while
the car carried him forward, causing his right foot
to act as a pivot upon which he was turned around,
falling on his right side and back toward the direc-
tion of the forward movement of the car.

There were a number of counteracting or inter-
acting forces playing on plaintiff's body aside from the
forward movement of the car toward the north. There
was the force of the motion toward the east given to
his body in his attempt to alight; there was the ten-
dency of his entire body to go forward; there was

the action of gravitation that tended to cause his right foot to remain stationary on the ground instead of moving with the car. It is the tendency of the feet to move with the car when the body tends to remain stationary by the force of gravitation that ordinarily would cause a body were it inanimate to fall with its upper part in the opposite direction to the forward movement. Then there is the all powerful but all modifying force of the involuntary action of one in attempting to regain his equilibrium, besides the many other peculiarities of plaintiff's position, all of these might combine to influence the direction in which plaintiff's body would naturally be projected.

We do not believe an expert in physics could ordinarily tell in what direction an inanimate mass might be projected as the result of a number of interacting forces being applied to it, much less as to what direction a live human body might be so projected. It is a known fact that a human being impelled by the strongest instinct known, "that of self-preservation" will involuntarily, through processes of reflex action, before he has time even for thought, attempt to counteract a force which if permitted to take its course would result in bodily harm to him.

Common experience has shown that it is not practicable to apply the laws of physics, in reference to inanimate objects, to a live, human being. For instance, one may be walking down an icy street and his feet slip; quite often he is able to regain his equilibrium although the center of gravity of his body may get without its base, that is, not within the space between his feet, while if an inanimate object be so place in the same position and the same thing would happen to it, its equilibrium would not be regained, but it would fall on account of the fact that muscular action would not be applied to it. On a football field a player is observed standing or running when one of his antagonists applies a great amount of force to the player's body, intending to upset the player, but the latter retains his feet; one often marvels that

the player is able to maintain his equilibrium. But if he be unable to retain his feet, he is often able to influence the direction in which his body will be projected although he may not absolutely control it. If two men were to be placed upon the platform of a street car, one of whom were dead and by reason thereof had become an inanimate body, and the car having been stationary was suddenly propelled forward, the dead man, by reason of the fact that the center of gravity is in his body so far from the ground, would immediately fall with his head toward the rear of the car and his feet toward the front, while, unless the jerk was too great, the live man would regain his feet through muscular action although he had nothing to catch hold of.

In an ordinary trial there is no evidence as to the intensity of the jerk of the car or the amount of resistance the passenger is able to involuntarily give to counteract the force of the jerk. In most any case that we might imagine there might be a number of interacting forces aplied to the body of a passenger and no one could well know the entire quality of such forces. Force is a peculiar thing, as is said by a good authority, "force is ordinarily defined by its intensity or amount, its direction, its power of application and the time at which it exists." [Vol. III, p. 2318, Cent. Dict. and Cyc.] Consequently it is hard to imagine any case where we can lay down as an arbitrary proposition that a human body may be projected in any given direction when we are not in a position to know of the intensity or suddenness of the jerk of the car, or of the quality of the other forces that were brought into play at the time.

In the case at bar the evidence was that the car gave "a sudden jerk forward." But even from this testimony we are unable to judge as to the exact intensity of such forward jerk of the car, nor are we able to tell what powers of resistance were offered by plaintiff against the force of the sudden jerk of the car forward; nor are we able to tell what effect

upon the situation was had by reason of the fact that plaintiff's right foot struck the street first and his left foot and body remained on the car, in the matter as to what direction his body would fall. However, the manner in which his body was projected and the way in which he fell appear to us to be very reasonable, but as was stated in Showen v. Railway, 164 Mo. App. l. c. 52, it is not for the court "to weigh the evidence in order to balance the probabilities or possibilities. Wherever the inference is permissible that the injury occurred in the manner claimed by the plaintiff, an issue of fact is made for the jury to determine."

The appellate court that will indulge in dogmatic conclusions and pronounce that to be impossible which not only might be possible but is well within the scope of reasonable result when forces are brought into play, and attempts in all cases to apply natural laws as applied to inanimate objects to live human beings, is deciding a case arbitrarily and without intelligent consideration. These cases ordinarily present problems of physics beyond the pale of judicial cognizance. As was stated in a recent case by this court:

"Strange things sometimes happen and apparently inconsistent with natural laws, but we should be slow to conclude that because of their apparent impossibility, they did not occur." Holland v. Railway, 157 Mo. App. l. c. 481.

We are not unmindful that this class of cases is bottomed on the negligent sudden *jerk* of the car and for this reason where it clearly appears that no counteracting or interacting force (including the force of muscular action) were, or could have been brought into play, then natural laws as applied to inanimate objects may be invoked as a matter of law. But that the doctrine of the Scroggins and Daniels cases is not to be extended is held in Allen v. Railway, 188 Mo. App. l. c. 200, where it is said: "but we have carefully refrained from extending this rule."

There is nothing in the record to show that the trial judge thought that the manner in which plaintiff claimed he fell was against natural law, but the former was unable to distinguish this case from the Scroggins and Daniels cases. However, he could not have done this without extending the doctrine of these two cases and this, we think, he should not have done.

The judgment is reversed and the cause remanded. All concur.