ANNIE SCROGGINS, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 31, 1909.

1. TRIAL: Jury: Evidence. Testimony will only be rejected as having no evidentiary value when it is so at war with plain physical facts and law and at variance with the common experience of mankind, that its acceptance would be shocking to reason.

2. ————: ————: ————. It is not within the province of an appellate court to weigh evidence or to make a selection from two or more reasonable conclusions of fact presented by the evidence, such duties belong to the jury, but an appellate court may determine whether the evidence adduced is substantial and the conclusion reached reasonable, and if it thinks the evidence supporting the verdict and judgment is not substantial it will be reversed, regardless of the findings of the jury or the trial court.

3. CARRIERS: Passengers: Evidence. The evidence adduced considered and held to show that plaintiff was injured while attempting to alight from a rapidly moving car, and not by the sudden starting of the car after it had stopped.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

REVERSED.

*John H. Lucas, Ben F. White* and *Chas. N. Sadler* for appellant.

A passenger has no right to attempt to alight from a car at any place other than the usual place for receiving and discharging passengers. Jackson v. Railway, 118 Mo. 199; Jacobson v. Transit Co., 106 Mo. App. 339; Corum v. Railway, 113 Mo. App. 631; Nurse v. Railway, 61 Mo. App. 67; McCarty v. Railway, 105 Mo. App. 596; Spaulding v. Railway, 184 Mass. 470; Railway v. Mills, 91 Ill. 39. Statements of witnesses contradictory of general knowledge, or opposed to physical facts, or contrary to the operation and effect of natural forces, should not be accepted by any court. Gurley v. Railway, 104 Mo. 211; Hunter v. Railroad, 23 N. E. 9; Nugent v. Milling Co., 131 Mo. 241; DeMaet v. Storage Co., 121 Mo. App. 92; Stafford v. Adams, 113 Mo. App. 717. The rule of *res ipsa loquitur* does not apply where the acts of negligence complained of are specifically pleaded. Orcutt v. Bldg. Co., 201 Mo. 425; McGrath v. Railway, 197 Mo. 97; Bartley v. Railway, 148 Mo. 124; Ferry v. Railway, 162 Mo. 75; Ely v. Railway, 77 Mo. 34; Bunyan v. Railway, 127 Mo. 12; Hamilton v. Railway, 114 Mo. App. 504; Roscoe v. Railroad, 202 Mo. 424. It is error to admit evidence of facts not pleaded, or to instruct on issues not made by the pleadings. Davidson v. Transit Co., 211 Mo. 362; McIntosh v. Railway, 103 Mo. 131; Van Cleave v. Railroad, 124 Mo. App. 224; Fulkerson v. Thornton, 68 Mo. 468; Kenney v. Railway, 70 Mo. App. 253; Melvin v. Railway, 89 Mo. App. 107; Halpin Mfg. Co. v. School Dist., 54 Mo. App. 371; Kennedy v. Railway, 128 Mo. App. 299; Smith v. Railroad, 126 Mo. App. 123. An instruction not based on the evidence is erroneous and should not be given. Hahn v. Cotton, 136 Mo.

216; Smith v. Sedalia, 152 Mo. 283; Press B. & M. Co. v. Buick & Q. Co., 151 Mo. 501; Regan v. Railway, 144 Mo. 622; Price v. Railway, 77 Mo. 508. The peremptory instruction in the nature of a demurrer to the evidence, offered by appellant at the close of plaintiff's case and renewed at the conclusion of all the evidence, should have been given. McCarty v. Railway, 105 Mo. App. 596; Spaulding v. Railway, 184 Mass. 470; Railway v. Mills, 91 Ill. 39; Gurley v. Railway, 104 Mo. 211.

*T. B. Buckner* for respondent.

An affirmative defense should be clearly and distinctly set forth. Musser v. Adler, 86 Mo. 445; Northrup v. Insurance Co., 47 Mo. 435; Donovan v. Railroad, 89 Mo. 147; Flint Walling M'fg. Co. v. Ball, 43 Mo. 505.

JOHNSON, J.—Action for damages for personal injuries alleged to have been caused by the negligence of defendant. Verdict and judgment were for plaintiff in the sum of $500, and the cause is here on the appeal of defendant. The injury occurred after dark in the evening of November 28, 1906, on the Twelfth street line of defendant's railway system in Kansas City. Plaintiff, who was a heavy woman, was a passenger on an eastbound car. (The course of Twelfth street is east and west.) Owing to the crowded condition of the car, she was compelled to stand in the aisle. She desired to alight at Flora avenue and rang the bell as a signal to stop at that place. She testified that the car ran beyond the regular stopping place about one hundred feet before stopping, but that it did come to a full stop for passengers to alight and that she made her way to the rear vestibule, proceeded down the steps and was in the act of stepping from the last step to the street when the car started forward suddenly and violently and threw her to the pavement, inflicting the injuries of which she complains. One other witness, a colored man who was walking on the sidewalk, stated that he saw the car stop

about midway of the block, saw plaintiff in the act of alighting, saw the car start before she could step from it and saw her thrown to the street. On the other hand, witnesses for defendant state the car did not stop at all, but that plaintiff attempted to alight in the middle of the block while the car was running at an ordinary rate of speed. One of these witnesses, Doctor Roberts, testified that he jumped off the car at the rear, when he reached a point opposite his home, and that immediately afterward he heard plaintiff fall and looking around, saw her lying in the street. All of the witnesses agree that the car did not stop after plaintiff fell. As to the manner of her fall, plaintiff testified on direct examination:

"Q. Mrs. Scroggins, state to the jury how you were hurt? A. Well, I was hurt from the fall. I struck my shoulder against the ground and slided quite a distance from the force of the fall, and struck my hip."

On cross-examination:

"Q. How did it start? A. It made a sudden jerk—it moved right off at once.

"Q. What became of you? A. I fell on my back in the street.

"Q. Fell on your back—now which direction did your head fall? A. My head fell towards the east.

"Q. That is to say, now, this being the platform of the car (showing) and this the step, and this the pavement—which way were you facing when you got off? A. I don't know which way I was facing. I fell on my left shoulder on this side (showing). I must have been turned around that way when I got up, like (showing). That way, I guess. Most people do.

"Q. Especially women? A. I don't know about that.

"Q. Isn't it a fact that most women do get off cars backwards? A. I never did notice any woman but myself.

"Q. At any rate you fell on your back and fell to the east, didn't you? A. I fell on my left shoulder.

"Q. And back? A. Yes, sir.

"Q. And fell to the east? A. Yes, sir.

"Q. That is the way the car was going? A. Yes, sir.

"Q. You didn't have hold of anything when the car started up? A. No, I had turned loose my hold.

"Q. So that the movement of the car is what threw your head to the east? A. I don't know what threw me, but I know that is the position I fell in.

"Q. You know about how far you fell? A. I don't know. I fell quite a little distance. At least I lighted on the asphalt.

"Q. Kind of skidded on your shoulder? A. Yes, sir.

"Q. This car was going east and you fell east and skidded upon the pavement? A. It was on my back—going in that direction—the same direction the car went —kind of cat-e-cornered to the sidewalk. . . .

"Q. And before you stepped down from the lower step you had let loose? A. Yes, sir."

In support of its contention that the court should have sustained its demurrer to the evidence, defendant argues that the statement of plaintiff that she was thrown by the sudden forward movement of a stationary car, from which she was in the act of stepping to the street, is so at war with the conceded physical facts of the occurrence that it should be rejected as too insubstantial to raise an issue of fact for the jury. There is no controversy over the fact that plaintiff in falling pitched headlong in the direction in which the car was going and struck on her left shoulder on the pavement with an impetus so great that she slid head first along the pavement a distance of several feet. Defendant asserts that she could not thus have fallen had the fall been caused by the sudden starting of the car, and that it must have been caused by her attempt to alight while the car was in motion. In other words, that the version of the injury given by defendant's witnesses is so indisputably supported by the plain physical facts and laws of the situation that we should accept it as a thing con-

clusively established. If it were possible for a reasonable mind to reconcile plaintiff's account of her fall with the conceded effects thereof, we would say that her testimony had sufficient probative force to raise an issue of fact for the jury to solve. So frequently do unlooked-for results follow the meeting of opposing or interacting forces that courts should be loath to pronounce the testimony of witnesses unworthy of belief because it fails to coincide with what the court may think should have been the expected result of the meeting of such forces. Where there is any room at all for a reasonable difference of opinion respecting the verity of testimony, the court could not refuse to recognize it as evidence without invading the province of the jury. Courts should reject testimony as devoid of evidentiary value only where it is so at war with plain physical facts and laws, so at variance with the common experience of mankind, that its acceptance would be shocking to reason. It is not within our province as an appellate tribunal to weigh evidence or to make a selection from two or more reasonable conclusions of fact presented by the evidence. Such duties belong exclusively to the triers of fact, but it is our duty to pronounce on the questions of whether the evidence adduced by a party is substantial, or of whether a conclusion of fact falls within the bounds of reason, and in the performance of that duty, we are not to be controlled by the fact that the trial judge and twelve jurors have examined the evidence and pronounced it substantial and have indulged in a conclusion, the reasonableness of which is assailed. The appellate court must act in such matters on its own judgment and if it thinks the evidence supporting the verdict and judgment has no substance, it should reverse the judgment, regardless of what others have thought of the evidence.

With these principles and rules in mind, we find ourselves unable to give sanction to the action of the learned trial judge in overruling the demurrer to the evidence. We are convinced of the utter unreasonable-

ness of the conclusion that plaintiff's fall was caused by the sudden starting of a stationary car from which she was in the act of stepping to the street. The car was headed east and plaintiff was facing south when she attempted the final step. She is positive she had released her handhold at the time she began that step. Had she been holding to the car at the time it started, we would say her evidence is not incredible since the effect on the direction and manner of her fall by such attachment would be a question about which reasonable minds might differ. We so held in Pickens v. Railway, 125 Mo. App. l. c. 677, where we said:

"The direction of her fall doubtless was influenced by three opposing forces: The eastward motion she derived from the car, her southward motion in attempting to step from it, and the resistance offered by her attachment to the handhold which certainly could have greatly influenced the direction and nature of the fall. As we observed in Lang v. Railway, 115 Mo. App. 489, 'So frequently do unlooked-for results attend the meeting of interacting forces that courts, in such cases, should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other.' Under the conditions before us, we cannot say, as a matter of law, that plaintiff would have fallen in any given direction in either state of facts described."

At this term we applied the same doctrine in Burnett v. Railway, — Mo. App. —. But in the present case, plaintiff had released her hold and, without other support than her footing, was stepping to the street. How could the sudden starting of the car, when she was in that position, have the effect of throwing her head first in the direction in which the car was going? The natural result of such start would have been to jerk her feet towards the east and to pitch her body in the opposite direction. That would have been the effect pro

duced on an inanimate body in her position and the only modifying force that could have given a different direction to her fall would have been her subconscious efforts to counteract the sudden force exerted against her. Manifestly such involuntary but unsupported efforts could not have produced a counteracting force so pronounced as to overcome the impetus given her body by the starting of the car and to pitch her body in a direction opposite to that it otherwise would have taken, and that, too, with a momentum so great as to cause her to slide head first on the pavement in the direction the car was going. Her version of the occurrence is too unreasonable to pass muster. Clearly her fall was caused by her own negligence in attempting to alight from a rapidly moving car.

The judgment is reversed. All concur.