WARREN BASS v. DANA DURAND and R. BRYSON JONES, Appellants.—
136 S. W. (2d) 988.

Division Two, February 21, 1940.

*Ryland, Stinson, Mag & Thomson* and *Wright Conrad* for appellants.

*Charles F. Williams, Homer A. Cope, Cope & Hadsell* and *Walter A. Raymond* for respondent.

WESTHUES, C.—Respondent Bass filed this suit against appellants to recover damages for personal injuries alleged to have been sustained when a car driven by appellants collided with a delivery truck driven by respondent. There was a verdict and judgment in respondent's favor in the sum of $20,000, from which judgment appellants appealed. The conclusion reached by us renders unnecessary a statement of the facts on the merits.

Appellants briefed two points. We need consider only the first, which is, that the trial court erred in not declaring a mistrial while the trial was in progress when it was discovered that one of the jurors had failed to disclose facts, on *voir dire* examination, touching his qualification as a juror. Juror Miller was the subject of this controversy. Dr. Rex Diveley was one of appellants' principal witnesses. The *voir dire* examination, insofar as pertinent to the issue, was as follows:

"Mr. COPE: Now, is there any other gentleman? I will ask the same question also in connection with Dr. Rex Diveley, an orthepedic bone surgeon located in the Professional Building, associated with Dr. Dickson.

"Venireman W. A. MILLER: I have.

"Mr. COPE: And your name is—

"Venireman MILLER: W. A. Miller.

"MR. COPE: Did Dr. Diveley treat you as a personal physician, Mr. Miller?

"Venireman MILLER: No; my boy.

"Mr. COPE: How long has that been, Mr. Miller?

"Venireman MILLER: Six year ago.

"Mr. COPE: Have you ever had any other experience with Dr. Diveley other than that particular professional care rendered your son?

"Venireman MILLER: That is all. . . .

"Thereupon, during the *voir dire* examination, and during the general questions by Mr. Wright Conrad, the following proceedings were had:

"Venireman MILLER: My son was injured in an automobile accident.

"Mr. CONRAD: Did that suit go to trial?

"Venireman MILLER: No.

"Mr. CONRAD: Was it satisfactorily disposed of without the necessity of trial?

"Venireman MILLER: Yes.

"Mr. CONRAD: You were satisfied with the manner in which it was disposed of?

"Venireman MILLER: Not satisfied, but it was all I could get.

"Mr. CONRAD: Anyway, it was completely disposed of?

"Venireman MILLER: Yes.

"Mr. CONRAD: Was there anything in that experience to prejudice you one way or another about a lawsuit?

"Venireman MILLER: No.

"Mr. CONRAD: You would have no prejudice against the defendants generally, out of that experience?

"Venireman MILLER: No.

"Mr. CONRAD: Even though you don't feel they quite treated you right at that time? (No answer.)"

Juror Miller remained on the panel to try the case and the record shows that he was made foreman of the jury. After Dr. Diveley testified, he informed the attorney for the appellants that juror Miller had filed a suit against him, the witness, and other doctors to recover damages for the death of the juror's son; that ill feeling grew out of that lawsuit. The facts then developed were these: Juror Miller's son had been seriously injured in a car accident and was treated by Dr. Diveley. The patient died. A suit was filed against the parties involved in the car accident to recover damages for the injuries sustained by the son. After his son's death juror Miller filed suit against Dr. Diveley and his associates to recover $10,000 actual and $10,000 punitive damages. The petition charged that the doctors had not properly treated the injuries sustained by the juror's son and that the negligence of the doctors was the cause of his death. Both suits were settled without trials prior to the time the present case was tried. The case against Dr. Diveley was dismissed about fourteen months before the trial of this case. The record shows that the attorney for the appellants, immediately upon receiving the information from Dr. Diveley, informed the court what he had learned. He then made a further investigation, made a statement of the facts in full, and asked that a mistrial be declared. The attorney suggested that if the opposing counsel so desired he would make the statement under oath. Respondent's attorney stated that that was not necessary. The facts as above related were treated as if made under oath. The trial court suggested that juror Miller be excused and the trial proceed with eleven jurors. Appellants' attorney indicated his willingness to do so, but respondent's attorney would not agree. The trial court then proceeded with the trial over appellants' objection. The question is here for review.

It seems too plain for argument that juror Miller intentionally failed to disclose the fact that he had had a lawsuit against Dr. Diveley for malpractice. He did disclose that he had had a lawsuit arising out of the automobile accident for the injuries sustained by his son, but his answers to questions were limited to that suit. He was specifically questioned as to his acquaintance with Dr. Diveley, and anwered that the doctor had treated his son. Then note: "Have you ever had any other experience with Dr. Diveley other than that particular professional care rendered your son?" Answer by juror Miller: "That is all." The fact remains that was not all and the juror knew it was not. What transpired after the trial fully disclosed that the juror knew he was not giving all the information he should, and that the juror had not forgotten the lawsuit with the doctor wherein he sought not only actual but punitive damages. Note a portion of the juror's affidavit filed by respondent to support the verdict:

"I further state that I had no intention or desire to conceal anything about my particular lawsuit above referred to, and had Mr. Conrad inquired further and asked me the details of the case, I would have readily and willingly informed him that the case was against Dr. Diveley and others on account of the alleged negligent treatment of my son after he had received injuries in an automobile accident, and which treatment I alleged had caused the death of my son."

To refute the charge against the juror, that he had talked to other jurors during the trial about his experience with Dr. Diveley, the affidavit contains the following:

"While there may have been some casual mention in the presence of other jurors about my experience with Dr. Diveley in the treatment of my son, I never at any time suggested or intimated that my experience should or would in the least way react against the defendants in the trial of the above cause."

In the affidavit the juror further stated that despite his unpleasant experience with Dr. Diveley he was not prejudiced. It is fundamental law that a prospective juror is not the judge of his own qualification. That is a question for the trial court. [State v. White, 326 Mo. 1000, 34 S. W. (2d) 79.] For a full discussion of this point see Theobald v. Transit Co., 191 Mo. 395, l. c. 416, 90 S. W. 354, l. c. 359. It is the duty of jurors on *voir dire* examination to answer questions fully and frankly and it should not be necessary for attorneys to resort to cross-examination or to ask leading questions to ascertain the facts. Honest men do not hesitate to divulge information touching their qualification as jurors. We rule that juror Miller intentionally neglected to divulge the information about his lawsuit against Dr. Diveley. We also rule that the trial court erred in not declaring a mistrial when it was requested to do

so. Respondent was given an opportunity to avoid a mistrial by agreeing to have the juror excused. This offer was refused. Cases cited by respondent, where this court has ruled, that assignments in motions for new trial on the ground that jurors were prejudiced must be accompanied by affidavits of counsel and client that the facts relied on were unknown to them prior to the submission of the case, are not in point here. In this case the matter was called to the attention of the trial court prior to the submission of the case and the record shows beyond doubt that counsel immediately upon learning the facts informed the trial court. Samples of cases cited by respondent are: State v. Trainer, 336 Mo. 620, 80 S. W. (2d) 131, l. c. 135; State v. Malone, 333 Mo. 594, 609, 62 S. W. (2d) 909, l. c. 915. No neglect can be charged against appellants as to the *voir dire* examination because the juror was asked about his experience with Dr. Diveley. So the case of Allen v. Chicago, R. I. & P. Ry. Co., 327 Mo. 526, 37 S. W. (2d) 607, and similar cases do not aid respondent.

Respondent next insists that even though the trial court erred in its ruling, no prejudice resulted because appellants did not dispute liability but only contested the question of the amount of damages. Appellants vigorously insist that the verdict is grossly excessive. If the evidence of Dr. Diveley be true then the verdict is grossly excessive. Respondent insists that the verdict is not excessive and contends that even if it is the matter can be taken care of by a *remittitur*. This case, however, presents a difficult situation. There was a sharp dispute as to the extent of respondent's injuries. At the time of the trial respondent was wearing what is called a "Thomas collar," which held his neck in a rigid position. There is evidence in the record that this collar could be discarded as soon as the icy condition of the streets and sidewalks cleared. Appellants in their oral argument advanced the theory that the collar may also have been worn to impress the jury. The amount of damages in a personal injury case is primarily a question for a jury. That means of course an unbiased and unprejudiced jury. In this case the challenged juror was alleged to have been prejudiced against a doctor who was a material witness for appellants on the question of the extent of respondent's injuries. That, connected with the sharp dispute in the evidence, renders it difficult for us to say what amount would be proper to compensate respondent. Respondent cites the case of Webb v. Missouri-Kansas-Texas Railroad Co., 342 Mo. 394, 116 S. W. (2d) 27, in support of his contention. That case presented a different state of facts. The juror who was the center of the controversy was asked if he had had any claims for personal injuries. The juror stated that he had and detailed the facts in one case. It was afterwards found that he had had about twenty-five claims, many of which were trivial. A new trial was asked because

the juror had not disclosed the true facts. A hearing on the motion for new trial disclosed that the law firm defending that suit had also defended the suit where the juror was plaintiff, and all the information about the juror's numerous claims was in the files of that law firm. But the case was not decided on that point. It is important, however, to notice that the juror in the Webb case had not had a suit or claim against any party or witness connected with that case. The hearing on the motion did not disclose any prejudice on the part of the juror against anyone concerned with the Webb lawsuit. That is quite a different picture from the facts in the case under discussion. In a recent case, by Division One of this court, Lee v. Baltimore Hotel Co., 345 Mo. 458; 136 S. W. (2d) 695, this court said:

"The right of trial by jury guaranteed by our Constitution, if it is to be worth anything, must mean, as this court has said, 'the right to a fair and impartial jury.' [Privitt v. St. Louis-San Francisco Ry. Co. (Mo.), 300 S. W. 726, 728.] . . .

"Certainly also a party is entitled, unless he waives it, to a jury of twelve impartial qualified men. Even though three-fourths of them can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified men. A man who uses dishonest means to get on a jury, does not usually do so for the purpose of honestly deciding the case on the law and the evidence."

[See, also, Gibney v. St. Louis Transit Co., 204 Mo. 704, 103 S. W. 43, l. c. 47.] Juror Miller in his affidavit admitted that he mentioned his experience with Dr. Diveley to other jurors. This was highly improper. He failed to disclose the fact on *voir dire* examination. That was improper. Juror Miller remained silent when he should have spoken and spoke when he should have remained silent. In other cases cited by respondent it will be noted that no prejudice was shown to have existed on the part of the juror under consideration. For example: In Knight v. Kansas City, 138 Mo. App. 153, 119 S. W. 990, the only disqualification of the juror was that he could not read. The court decided that the attorneys had waived that disqualification by not making a proper inquiry on *voir dire* examination. The court added that the disqualification of the juror was not prejudicial because the verdict was unanimous. However, such a disqualification stands upon an entirely different footing than where the disqualification is alleged to be prejudice. It follows that the judgment in this case must be reversed and the cause remanded for new trial. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.