ROLLIN PIEHLER, a Minor, by His Next Friend, BERTHA SCHULTZ, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant.—No. 40303.—211 S. W. (2d) 459.

Division Two, April 12, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, May 27, 1948.

*Charles L. Carr, Frank J. Rogers* and *Cooper, Neel, Sutherland & Rogers* for appellant.

*Paul C. Sprinkle, F. M. Kennard, Wm. F. Knowles* and *Sprinkle & Knowles* for respondent.

[459] BARRETT, C.—In November 1944 the plaintiff, Rollin Piehler, his brother, Louis, and their friend, Ray Starks, were going horseback riding at the Park Valley Stables near Swope Park. A station wagon from the riding stable was to meet them at the end of the car line. Louis and Ray were twelve years old. Rollin was eleven and weighed eighty-eight pounds. By the time the Swope Park car approached the end of the line the three boys were the only passengers. As the streetcar approaches the eastern end of the line it runs in an easterly direction, veering to the south, and enters a loop. The loop forms a perfect semicircle with a radius of seventy-five feet. The boys told the streetcar operator that they were going horseback riding and that a station wagon was to meet them. It was a warm day and several of the streetcar windows were open. As the streetcar approached the [460] loop the boys saw the station wagon going towards "the zoo" and Louis and Ray jumped out of the streetcar window and ran towards the station wagon. The plaintiff, Rollin, went to the back of the car, got up on the long seat, with his right knee in the seat and his right hand on the window sill and began ringing the buzzer with his left hand. As the car went around the loop it picked up speed, threw the back end of the car around, and Rollin was thrown head first out the open window. He caught and held onto a window sill until the streetcar crossed the eastern portion of the loop when he fell to the ground and the streetcar ran over his left foot.

A jury awarded him $12,000 for his injuries and upon this appeal the streetcar company contends that the trial court should have sustained its motion for a directed verdict for the reason that there was no proof of negligence. It is urged that Rollin's testimony and description of the occurrence is so contrary to "natural law," Sir Isaac Newton's principle that "objects in motion continue in motion at the same speed, moving in the same direction until overcome by some other force" that it cannot be accepted by this court. It is urged that there was no proof of negligence because there was no evidence of probative force that there was an unusual movement of the streetcar or that the operator of the streetcar knew that Rollin had left his seat and assumed a position in the open window.

The allegation of the plaintiff's petition was that "suddenly the motorman . . . carelessly and negligently ran said car around the abrupt curve at said loop . . . and in so doing moved said car at such rapid speed as to give an abrupt, extraordinary and unusual jerk, thereby causing plaintiff to be thrown out of said window . . . ." As the streetcar approached and came into the loop Rollin said: "It was going slow, and it picked up speed." It was going

"About like a man walks fast" and after the other two boys jumped out "It was going a lot faster. About three times as fast." He said that the rear end "jerked (around) really fast" and that was when he went out. As the car went around the loop the motorman said: "The maximum speed I don't believe would have been over five miles an hour." He had cut the power off before the streetcar got into the curve. He denied that there was any sudden increase in speed as he drove around the loop although "we put on a point or two of power (in the curve) to counteract that binding." Another company employee said that when a streetcar was diverted from a straight line there was a tendency to continue in a straight line and "the weight of the car and the momentum of the car has a tendency to carry it on in a straight direction, and in a curve there is more or less pressure against the outer rail." He said that after the car entered the curve there was some centrifugal force to the outside on the wheels and the car. As the car moves around the curve there are two motions "Forward and in the curve line."

It is true in a railroad case that the plaintiff's description of the train's action as "an awful jolt and jar" and "a very hard and unusual jar" was said to convey no meaning and described nothing more than the usual operation of a train. Elliott v. C., M. & St. P. Ry. Co., (Mo.) 236 S. W. 17. Nevertheless, in that case, it was held that the plaintiff's descriptive evidence when considered with the conductor's evidence that any jar sufficient to throw a passenger down was unusual made a case for the jury. In Keppler v. Wells, (Mo.) 238 S. W. 425 the plaintiff said "it seemed like the car slackened up, gave another severe jerk;" "an awful jerk" and the court held that whether there was an unusual movement and negligence was for the jury. In Bales v. Kansas City Public Service Co., 328 Mo. 171, 40 S. W. (2d) 665, it was tacitly conceded that a similar movement made a case for the jury. "At precisely what point such violent movements lose their character as incidents reasonably to be expected during the course of travel and assume the status of actionable negligence is a question of fact, to be determined in the light of the surrounding circumstances." 10 Am. Jur., Sec. 1343, p. 214. "It is negligence to cause a streetcar to give a violent or unusual jar, jerk or jolt. . . . Likewise, accelerating the speed of a moving car by a 'violent or unusual jerk' has always been declared actionable [461] negligence . . . ." Laible v. Wells, 317 Mo. 141, 145, 146, 296 S. W. 428, 429-430. The rule was applied to a "summer car" going into a curve in Chadwick v. St. Louis Transit Co., 195 Mo. 517, 93 S. W. 798. Under all the circumstances whether the speed of the streetcar was suddenly increased and the rear end of the car was caused to "lurch outward" or "abruptly swerve out with an abrupt and unusual jerk in an unusual manner" so as to constitute negligence was for the jury. Hite v. Metropolitan St.

Ry. Co., 130 Mo. 132, 31 S. W. 262; Shafer v. Kansas City Rys. Co., (Mo. App.) 201 S. W. 611; Witters v. Metropolitan St. Ry. Co.; 151 Mo. App. 488, 132 S. W. 38; 10 Am. Jur., Secs. 1343-1347. The operator knew that Rollin or one of the boys was on the streetcar because someone was ringing the buzzer. Whether he was aware of Rollin's exact position in the car was not an issue in the case, at least in so far as the plaintiff's making a prima facie case was concerned. Higbee v. Fleming, (Mo. App.) 269 S. W. 673; Paul v. Metropolitan St. Ry. Co., (Mo. App.) 179 S. W. 787; Lindsay v. St. L. & H. Ry. Co., (Mo. App.) 178 S. W. 276, 280. The really substantial issue was whether the plaintiff was thrown out of the streetcar as and in the manner he claimed or whether he jumped out as the defendant claimed and as its evidence tended to show.

It is said that the circumstances described by Rollin, that the sudden movement outward of the rear end of the car caused him to suddenly be thrown in the same direction the car was moving, is contrary to "natural law." The appellant's argument is this: "If the speed of the streetcar was increased, causing the rear end to suddenly swing outward, there would be nothing to cause plaintiff to increase his speed and swing outward but the pull of the streetcar forward and outward. We would have a tendency to continue at the same speed which would cause the streetcar to move forward and outward faster than the plaintiff was moving. This would throw plaintiff backward and in an opposite direction to the direction that the streetcar was moving. Instead of being thrown outward with the streetcar he would have been thrown toward the center of the car and toward the back. A sudden movement forward tends to throw the passenger backward. A sudden slowing down throws the passenger forward. A lurch out throws the passenger in. The same principle of natural law governs in all cases—that bodies in motion have a tendency to retain their previous condition of motion." For these reasons it is said that the plaintiff's evidence is contrary to natural law and will not support a verdict. But, notwithstanding the court's omniscience concerning "natural law" (Dunn v. Alton R. Co., 340 Mo. 1037, 104 S. W. (2d) 311), it cannot be said that the described circumstances are so manifestly contrary to some immutable law of physics that this court may summarily dispose of the case upon that ground alone. Annotations 21 A. L. R. 141; L. R. A. 1916D, p. 301. "We have often said that 'so frequently do unlooked for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other.'" Pashea v. Terminal R. Ass'n., 350 Mo. 132, 141, 165 S. W. (2d) 691, 694. In this occurrence there were too many imponderables and variables; too many opposing and mutually modifying forces, for this court to

declare upon its own knowledge that the occurrence is contrary to some immutable law of physics. Klass v. Metropolitan St. Ry. Co., 169 Mo. App. 617, 621, 155 S. W. 57; Whitaker v. K. C. Rys. Co., (Mo. App.) 209 S. W. 632. Admittedly the cases dealing with this subject are not readily reconcilable. In addition to the Dunn case there have been other cases in which it was declared that the occurrences relied upon were contrary to the laws of physics. Scroggins v. Metropolitan St. Ry. Co., 138 Mo. App. 215, 120 S. W. 731; Daniels v. K. C. El. Ry., 177 Mo. App. 280, 164 S. W. 154. On the other hand, in almost identical occurrences courts have refused to so apply the laws of physics. Hecke v. Dunham, (Mo. App.) 192 S. W. 120; Pickens v. Metropolitan St. R. Co., 125 Mo. App. 669, 103 S. W. 124; Barnett v. Metropolitan St. R. Co., 138 Mo. App. 192, 120 S. W. 730. It is possible to distinguish this occurrence from [462] the Dunn case on the facts. It is sufficient, however, to say that the circumstances detailed are not so clearly contrary to some unquestionable law of science, known to the court, that the evidence must be rejected. Pashea v. Terminal R. Ass'n., supra; Doyle v. Merchants Bridge Ter. Ry. Co., 326 Mo. 425, 31 S. W. (2d) 1010. The trial court was not in error in overruling the appellant's motion for a directed verdict upon these assigned grounds and the remaining question is whether there was prejudicial error in the trial of the cause.

█ In this connection it is urged that a new trial should have been granted because a juror, Mr. Prince, failed to disclose on voir dire examination that he had a claim against the appellant, Kansas City Public Service Company. In the first place the respondent contends that the juror did not understand the question and that the jurors were examined "with respect to claims against the appellant," meaning "live claims" and not claims that had been abandoned as Prince's claim had been. But respondent's counsel asked this question: *"Has any of you ever had a claim of any kind against the Kansas City Public Service Company,* or its predecessor Company, the Kansas City Railways Company, the old Metropolitan Street Railway Company?" Again, respondent's counsel said: "Is there any other gentleman on the panel who ever had a claim, or any member of your immediate family, ever had a claim against the present Company or its predecessor?" In response to the first question one juror told about a property damage claim which the company settled when his automobile was hit by a streetcar. Another juror told about a claim his wife had when she was injured in alighting from a streetcar. That claim was settled. Then appellant's counsel said to the panel: "Has any of you—I will go a step further in connection with what he asked you about,—have you or any member or members of your immediate family ever had a claim for damages against anybody,—any corporation, company, partnership or individual, other

than the ones that have already answered on that?'' Plainly, therefore, by respondent's own counsel the direct question was asked: ''Has any of you *ever had a claim of any kind against the Kansas City Public Service Company?*'' Furthermore, two jurors answered and one of them told about a claim the company had settled with him when his car was damaged in a collision with a streetcar. And in his affidavit on the motion for a new trial juror Prince did not contend that he was not asked the question or say that he did not understand the questions. He said: ''Affiant states that he did not consider he had any claim of any kind *pending* and when the questions were asked about *any pending claim or suit* that he made no reference to the same because he was not pressing any claim and no suit had been filed.'' By the record then, the direct question was asked and understood, and admittedly juror Prince made no response to it but remained silent.

The fact was that on May 17, 1943 juror Prince was driving his 1941 Mercury sedan when it was involved in a collision with a streetcar at 62nd Terrace and Brookside. As a result of the collision he personally made a claim against the company for $100.00 for the damage to his car. The company estimated the damage to his car at $268.60. Prince went in person to the company's claim department and asserted the claim which was denied. Subsequently Prince turned the claim over to a lawyer who in February 1944 notified the company that he represented Prince who was claiming damages for personal injuries as well as for property damage. As a result of the collision Prince and the operator of the streetcar were charged in traffic court. The streetcar operator was discharged and Prince was fined fifteen dollars and required to attend traffic school for two nights. He appealed the fine and the case was finally dismissed. Mr. Halper, an investigator for the Santa Fe Railroad, told a company claim man that Prince ''was complaining of being railroaded on his claim.'' Another man overheard Prince talking about his claim and heard him say ''he was now claiming injury to his shoulder and leg, and was going to have x-rays taken and sue us.'' Prince did not testify upon the motion for a new trial and in his affidavit does not deny any of these matters. He says that he was not biased and prejudiced. As to his claim he says ''that his [463] automobile was involved in a collision which occurred in 1943, it being struck by a streetcar; that as a result of the collision he was arrested and fined in the Municipal Court of Kansas City, but on appeal he was released; that he did request the Streetcar Company to repair his car and they failed to communicate with him and that he talked to George Charno and was informed by him that he could collect nothing. Affiant states that the matter was thereupon dropped and he forgot the same.''

On the hearing of the motion for a new trial respondent's counsel called certain members of the company's claim office and proved that the company keeps a record of all claims and even of the votes of jurors. The company has 200,000 files with about 300,000 names in their card index. The company had a record of Prince's claim but they all testified that they did not check the card index until after the verdict. There were forty or fifty claims under the name "Prince." But the respondent does not claim that the appellant. company or its attorneys who participated in the trial actually, knew of Prince's claim at the time he was chosen as one of the twelve. Webb v. M.-K.-T. R. Co., 342 Mo. 394, 398, 116 S. W. (2d) 27, 29.; 31 Am. Jur., Sec. 119, p. 647. The respondent only asserts that "although the appellant admits that it has full records as to any claimant, that yet it omits checking those records until after an adverse result."

The respondent's basic argument is that the granting or refusing of a new trial because of the misconduct of a juror, such as is involved here, is a matter within the sound discretion of the trial court and that there was no abuse of that discretion in this instance. Reich v. Thompson, 346 Mo. 577, 142 S. W. (2d) 486. In this connection, however, certain fundamentals should be noted. "The right of trial by jury guaranteed by our Constitution, if it is to be worth anything, must mean, as this court has said, 'the right to a fair and impartial jury.' . . .. Certainly also a party is entitled, unless he waives it, to a jury of twelve impartial qualified men. Even though three-fourths of them can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified men." Lee v. Baltimore Hotel Co., 345 Mo. 458, 463, 136 S. W. (2d) 695, 698. Furthermore, "It is fundamental law that a prospective juror is not the judge of his own qualification." Bass v. Durand, 345 Mo. 870, 874, 136 S. W. (2d) 988, 990; 50 C. J. S., Secs. 273, 279, p. 1036, 1066. It is the duty of a juror on voir dire examination to fully, fairly and truthfully answer all questions directed to him so that challenges may be intelligently exercised (50 C. J. S., Sec. 276(e), p. 1059) and the juror's intentional concealment of a material fact may compel the granting of a new trial.

In this case there is not a mere conflict of affidavits or of evidence concerning juror Prince's claim and the circumstances connected with the claim. Plater v. Kansas City, 334 Mo. 842, 851, 68 S. W. (2d) 800, 804. The juror admits the facts but claims that he did not consider that he had a claim and in any event that he was not prejudiced. But in view of his experience, the prosecution in police court and his feeling that he had been "railroaded," he was not the best judge of his fitness as a juror. The granting of a new trial may seem to be a severe penalty to impose on this young boy and his

counsel and if liability were certain and the case clearly concerned only the measure of damages it could not be said that the court had abused its discretion in refusing to grant a new trial. Webb v. M.-K.-T. R. Co., 342 Mo. 1. c. 399, 116 S. W. (2d) 1. c. 29; Lineker v. M.-K.-T. R. Co., (Mo. App.) 142 S. W. (2d) 356, 359. But as we have indicated, the really vital and important question for the jury to decide in this case was liability. The real contest was whether Rollin was negligently thrown from the streetcar as he claimed or whether he jumped from the streetcar as the appellant claimed. "Had there been a question of liability in this case we would have had a different situation and indeed a grave question, because the objectionable juror was retained on the panel of twelve to try the case. In the administration of justice it is all important that unbiased jurors be selected. This matter should always receive close attention on the part of trial courts, and the rules of [464] law pertaining thereto should not be relaxed. Where there is a dispute as to liability, and an objectionable juror is permitted to try the case, it is difficult to conceive how that would be harmless error, unless waived by the losing party, even though there be a unanimous verdict." Webb v. M.-K.-T. R. Co., 342 Mo. 1. c. 399, 116 S. W. (2d) 1. c. 29. The plain and only reasonable inference from this record is that juror Prince intentionally concealed the fact, after direct examination on the subject, that in 1943 and 1944 he had a claim against the appellant. In the circmstances "it is difficult to conceive how that could be harmless error." Bass v. Durand, supra; Gibney v. St. Louis Transit Co., 204 Mo. 704, 103 S. W. 43; Schierloh v. Brashear Freight Lines, (Mo.) 148 S. W. (2d) 747.

In view of this disposition of the cause we do not pass on the correctness of the instructions or the admissibility of certain evidence. Because of the error noted the judgment is reversed and the cause remanded for a new trial. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.