**Melissa HEITNER, Plaintiff–Appellant,**

v.

**Murphy GILL and Ann Allman, Defendants–Respondents,**

v.

**Scott HEITNER, Third–Party Defendant.**

No. 21458.

Missouri Court of Appeals,
Southern District,
Division Two.

April 21, 1998.

Motion for Rehearing or Transfer to Supreme Court Denied June 10, 1998.

Addendum to Opinion May 19, 1998.

Application for Transfer Denied
Aug. 25, 1998.

Glenn R. Gulick, Jr., Hershewe & Gulick, P.C., Joplin, for Appellant.

Malcolm L. Robertson, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for respondent Gill.

Daniel D. Whitworth, Myers, Taylor & Whitworth, P.C., Webb City, for respondent Allman.

PARRISH, Presiding Judge.

Melissa Heitner (plaintiff) brought an action for personal injuries sustained in an automobile accident against Murphy Gill and Ann Allman (collectively referred to as defendants). The trial court entered judgment for defendants following a jury trial. This court remands with directions for the trial court to enter findings concerning its hearing on an allegation of juror nondisclosure.

Plaintiff was injured in an automobile accident that occurred March 4, 1990. She was a passenger in a pickup truck driven by her then-husband, Scott Heitner. They were traveling north on Highway 71 in McDonald County.

Defendant Murphy Gill was also traveling north on Highway 71. His vehicle was following the Heitner vehicle. Both vehicles were traveling at a speed of about 40 miles per hour. They were separated by a distance of four to five car lengths.

The Heitners planned to meet plaintiff's sister at a convenience store at Anderson, Missouri. As they approached the store, the Heitner vehicle slowed. Mr. Gill saw the back end of the Heitner vehicle rise as if making a sudden stop. He saw no turn

signal or brake lights. Mr. Gill applied his brakes and tried to swerve, but his vehicle collided with the Heitner pickup. The collision caused the pickup to roll onto its side into the southbound lane of traffic.

Defendant Ann Allman was operating a vehicle on Highway 71 southbound. She saw the Heitner vehicle stopped, or almost stopped, in the northbound lane. She testified that it looked as if the pickup were turning but there was no turn signal. She saw Mr. Gill's vehicle approach the pickup rapidly from behind and saw the Heitner pickup pushed toward her on its side in her lane of traffic. Ms. Allman applied her brakes and veered to her right, but was unable to avoid a collision with the pickup. The force of the impact of the Allman vehicle with the pickup pushed the pickup back onto its wheels and into the convenience store parking lot.

An ambulance was called to the accident scene and plaintiff was taken to a hospital. She sustained a spinal cord injury, a collapsed lung and rib fractures. Surgery was performed on her arm and back. A physician who evaluated plaintiff for rehabilitation testified she was a T–10 paraplegic as a result of her injuries.

Plaintiff brought a negligence action against defendants seeking damages for personal injuries. Defendants brought separate third-party claims against Scott Heitner (third-party defendant) for indemnification or contribution in the event either defendant was found to be liable. Mr. Heitner filed no responsive pleading.

The trial court gave one "package" of jury instructions. It included separate verdict-directing instructions for plaintiff's claims against Mr. Gill and Ms. Allman, Instruction Nos. 6 and 7. The package had a single verdict-directing instruction on the issue of comparative fault with respect to defendants' third-party claims against third-party defendant, Instruction No. 11.[1] A verdict form

1. Instruction No. 11 stated:
   In your verdict, you must assess a percentage of fault to third-party defendant Scott Heitner if you believe:

First, either:
   Third-party defendant Scott Heitner suddenly slowed his pickup truck on the highway

was included in the package. It was returned, signed by nine jurors, completed as follows:

## VERDICT

Note: Complete the following paragraph by filling in the blanks as required by your verdict. If you assess a percentage of fault to any of those listed below, write in a percentage not greater than 100%, otherwise write in "zero" next to that name. If you asses a percentage of fault to any of those listed below, the total of such percentages must be 100%.

On the claim of plaintiff Melissa Heitner for personal injury, we, the undersigned jurors, assess percentages of fault as follows:

| | | |
|---|---|---|
| Defendant Allman | 0 % | (zero to 100%) |
| Defendant Gill | 0 % | (zero to 100%) |
| Third party defendant Scott Heitner | 100 % | (zero to 100%) |
| TOTAL | 100 % | (zero to 100%) |

Note: Complete the following paragraph if you assessed a percentage of fault to any defendant.

We, the undersigned jurors, find the total amount of plaintiff's damages to be $2,000,000.00 (stating the amount.)

. . .

The judgment recites that "the jury returned a verdict on a verdict form agreed to by plaintiff and defendants at the instruction conference"; that the verdict was signed by nine jurors assessing zero fault to each defendant "and 100% of the fault to third-party defendant Scott Heitner and assessing damages at $2,000,000." It further states:

The verdict is accepted and judgment entered accordingly in favor of both defen-

without first giving an adequate and timely warning of his intention to slow, or
  Third-party defendant Scott Heitner failed to signal an intention to turn, and
Second, third-party defendant Scott Heitner, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

dants and against plaintiff and defendants are discharged from liability to plaintiff. The assessment of fault to third-party defendant Scott Heitner and the finding of damages is surplusage and not necessary to the general verdict since plaintiff had no pending claim against third-party defendant Scott Heitner and the third-party plaintiffs-defendants were found not to be at fault and therefore have no basis for a judgment over on their third-party petitions against the third-party defendant.

Plaintiff raises five allegations of trial court error. The first alleges error in not granting a new trial because of alleged intentional nondisclosure of information by a juror during voir dire. Three claims of trial court error are directed to closing arguments. The final allegation is that "[t]he trial court erred in setting aside the damage portion of the jury's verdict, and in not setting aside the liability portion of the jury's verdict."

■ Point V is plaintiff's claim that the trial court erred in not setting aside the jury's liability findings with respect to defendants and in setting aside the damage finding. It is without merit.

Defendants' third-party actions were brought pursuant to Rule 52.11(a). Third-party defendant was not a party to the action brought by plaintiff—plaintiff did not sue Scott Heitner—but was a person who was or might have been liable to defendants for all or part of plaintiff's claim against them. However, the jury found no liability on the part of defendants.

Plaintiff did not prevail on her claim against defendants. The jury rendered a general verdict in favor of defendants on that claim. Since defendants were found not liable, the finding that plaintiff sustained damages from injuries not attributable to defendants was meaningless.[2] The finding of

Third, such negligence directly caused or directly contributed to cause damage to plaintiff Melissa Heitner.

2. Arguably, submitting Instruction No. 11, n. 1, *supra*, as part of the package of instructions for plaintiff's claim against defendants and a single verdict form was misleading and contrary to MAI directions. Defendants' third-party claims

damages was not necessary to the general verdict that was rendered. The trial court rightly disregarded it as surplusage. *Roberts v. Obremski,* 761 S.W.2d 291, 292 (Mo. App.1988).

■ Plaintiff also argues in Point V .that the verdict's finding of no liability by defendants was inconsistent with the jury's award of damages. Plaintiff asserts that this alleged inconsistency can only be resolved if the jury's assessment of liability is set aside.

■ Plaintiff's assertion of inconsistency with respect to the finding of liability (or lack of liability) and the assessment of damages was not timely made. A claim that a verdict is inconsistent must be presented to the trial court before the jury is discharged or it is waived. *Douglass v. Safire,* 712 S.W.2d 373, 374 (Mo. banc 1986). If an inconsistency in a verdict is raised before a jury is discharged, the jury may be allowed to correct the inconsistency by returning to the jury room for further deliberation. *Id.* This procedure is consistent with the general rule that a trial court must be given an opportunity to correct an error while correction is still possible. *Id.* See also *Wilferth v. Pruett,* 854 S.W.2d 625, 626–27 (Mo.App.1993); *Hulshof v. Noranda Aluminum, Inc.,* 835 S.W.2d 411, 415 (Mo. App.1992). Point V is denied.

Points II, III and IV are directed to occurrences during closing argument. Points II and IV relate to statements made during defendant Gill's closing argument. Point III is directed to an objection by defendant Gill during the rebuttal portion of plaintiff's closing argument.

■ Point II asserts that defendant Gill's attorney misstated the law during closing argument by asserting that the law permitted the jury to find defendant Gill liable only if the jury first found the driver of the Heit-

ner vehicle had the vehicle's turn signals on. Point II contends "[t]he trial court erred in permitting defendant Gill to misstate the law during closing argument and to misinstruct the jury as to the law."

Defendant Gill's attorney told the jury, "And it is the law of the state that even though you have a rear-end collision, if that vehicle has suddenly stopped without brake lights and warning, you should not be civilly liable for huge damages for—." Plaintiff's attorney objected that the statement was "an absolute misstatement of law that if you rear-end somebody, if you don't have a signal on, you are not liable for a rear-end collision.".

At the conclusion of a bench conference, plaintiff's attorney told the trial judge, "Judge, we need a Court's ruling in the presence of the jury that that was a misstatement of the law." Plaintiff's attorney argued that the statement was contrary to what was stated in Instruction No. 7 that had been read to the jury.

The trial judge told the jury:

The objection by [plaintiff's attorney] that that was an incorrect statement of law is sustained by the Court. The Court would refer you back to Instruction No. 7, which we refer to as a verdict director, and that says, "You must assess a percentage of fault to Defendant Gill if you believe, first, either Defendant Gill's automobile came into collision with the rear of the pickup truck in which plaintiff was a passenger, or Defendant Gill failed to keep a careful look-out, and second, Defendant Gill in any one or more of the respects submitted in paragraph first was thereby negligent, and third, such negligence directly caused or directly contributed to cause damage to Plaintiff Melissa Heitner.

against third-party defendant were separate claims. They were not part of plaintiff's claim. Notes on Use to MAI 2.05 (1980 New) state that instructions *in multi-claim cases* will be packaged and refer to MAI Illustrations in Chapter 35.

Illustration 35.03 uses packaging with separate verdict forms for impleader claims. That illustration utilizes MAI 2.05 (1980 New) and MAI 4.13 (1979 New) to separate a defendant's claims

for apportionment of fault and apportionment of damages. It uses a separate package of instructions and separate verdict form to determine if a defendant is entitled to apportionment of fault based on his or her claim against a third-party defendant and another separate package of instructions and separate verdict form to assess the proportions of fault with respect to damages assessed in a plaintiff's claim. That procedure was not followed in this case.

Plaintiff complains that the argument to which her attorney objected was part of on-going statements by defendant Gill's attorney about third-party defendant's failure to signal a stop or turn; that the statements were improper. Plaintiff asserts that the series of statements began "[w]ithin the first minute of defendant Gill's closing argument."

In the early part of defendant Gill's closing argument, his attorney told the jury that in order for plaintiff to recover, the jury had to believe that third-party defendant "with this aging pickup, drove carefully up, turned on his turn signals at some point, slowed, stopped, had his foot on the brake at all times, and waited for a parade of 10 to 15 vehicles to go through before this accident occurred."

Later, Mr. Gill's attorney told the jury:

And as I said at the very beginning of my argument, you have to find, you have to believe that Mr. Heitner was stopped, had a turn signal on, and the brake lights on.

After some other remarks he added:

Their whole case depends upon you believing and accepting, against Mr. Gill only, that Scott Heitner was waiting there for a parade of vehicles to come through with the turn signal on, the brake light on, . . . .

No objection was made. Plaintiff did allege in her motion for new trial that the trial court committed error in allowing the statements to be made.

Plaintiff's complaint about what occurred when her attorney objected during Gill's closing argument is without merit. Plaintiff's attorney asked the trial court to rule "in the presence of the jury that that was a misstatement of the law." No request for mistrial or other relief was made.

■ "A party may not assert as error that the trial court failed to do more than was requested." *Edley v. O'Brien*, 918 S.W.2d 898, 906 (Mo.App.1996); *Wulfing v. Kansas City Southern Industries, Inc.*, 842 S.W.2d 133, 159 (Mo.App.1992). When a trial court sustains an objection to improper argument and no further remedial action is requested by the objecting party, no error is preserved for appellate review. *Olsten v. Susman*, 391 S.W.2d 328, 330 (Mo.1965);

*Hacker v. Quinn Concrete Co., Inc.*, 857 S.W.2d 402, 410 (Mo.App. 1993).

■ Plaintiff's complaints about other remarks made during closing argument to which no objections were made also fail. Her complaints were not preserved for appellate review. A party's failure to object at trial to closing arguments of opposing counsel is fatal to an allegation of error with respect to those arguments. *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 15 (Mo. banc 1994); *Porter v. Bi–State Development Agency*, 710 S.W.2d 435, 436 (Mo.App.1986). Point II is denied.

■ Point IV is also directed to defendant Gill's closing argument. During plaintiff's closing argument, her attorney told the jury the trial was her "only trial for the lifetime." He explained that she could not return to court in the future for relief against the parties she had sued; that "this is really the last day of the trial for [plaintiff] for the rest of her life."

In the closing argument for Mr. Gill, his attorney reminded the jury that plaintiff's attorney had "mentioned several times how important this case is to [plaintiff]." He told the jury, "[C]onsidering the size of the sums that have been mentioned here today, that you also are deciding the fate of [defendant Gill and Mrs. Gill]." He told the jury that the trial was his client's only opportunity to discuss the case and to tell them why they should find in his favor.

Point IV asserts "[t]he trial court erred in allowing the closing argument of defendant Gill and in not granting plaintiff's motion for new trial based upon that closing argument." Plaintiff contends defendant Gill's argument was "an improper appeal to emotion and sympathy and an improper reference to the finances of defendant"; that it "caused the jury to return its improper verdict."

As stated with respect to Point II, it is necessary to object at trial in order to preserve a complaint concerning closing argument for appellate review. *Tune, supra; Olsten, supra; Hacker, supra.* Point IV is denied.

■ Point III is directed to an objection by defendant Gill to a statement plaintiff's attorney made during the rebuttal portion of plaintiff's closing argument. The trial court sustained the objection.

Plaintiff's attorney told the jury:

And, of course, they, they have sued [third-party defendant]. We don't have to prove anything on [third-party defendant]. All we have to prove, you can assess a percentage of fault if you find that the Gill vehicle rear-ended the Heitner vehicle. You can assess a percentage of fault against Gill.

Mr. Gill's attorney objected that the remark was a misstatement of law. Plaintiff's attorney thereafter showed the jury the verdict-directing instruction on plaintiff's claim against defendant Gill, Instruction No. 7, and continued his argument about what was required to be shown in order for the jury to assess a percentage of fault for the accident to defendant Gill.

Point III asserts the trial court erred in sustaining defendant Gill's objection. Plaintiff argues that under the first paragraph of Instruction No. 7, plaintiff needed to prove only that defendant Gill rear-ended the Heitner vehicle; that, therefore, the trial court's ruling sustaining the objection was error.

Instruction No. 7 states:

In your verdict you must assess a percentage of fault to defendant Gill if you believe:

First, either:

defendant Gill's automobile came into collision with the rear of the pickup truck in which plaintiff was a passenger, or

defendant Gill failed to keep a careful lookout, and

Second, defendant Gill, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to plaintiff Melissa Heitner.

■ Plaintiff's argument is based on the submission of her case under the "rear-end collision doctrine." That doctrine provides "that if one has his vehicle in a portion of the highway where he should have it in view of his course, and another traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, proof of the collision under such circumstances makes out a *prima facie* case of specific negligence against the driver operating the overtaking vehicle." *Nishwitz v. Blosser*, 850 S.W.2d 119, 122 (Mo.App.1993).

■ A *prima facie* case does not entitle a plaintiff to prevail as a matter of law or prohibit a defendant's verdict. *Feick v. Fenlon*, 939 S.W.2d 537, 538 (Mo.App.1997). A *prima facie* case is a case that is sufficient for submission to a jury. *Nishwitz, supra.*

■ In order for there to be liability in a rear-end collision case, a jury must find that a defendant was negligent. *Feick, supra.* The statement of plaintiff's counsel did not include that factor as one the jury had to find in order for his client to recover against defendant Gill. For that reason, the remark was a misstatement of law. The trial court did not err in sustaining the objection that was posed. Point III is denied.

■ The remaining point on appeal, Point I, alleges the trial court erred in not granting plaintiff's motion for new trial, and not setting aside the verdict and judgment and ordering a new trial because of juror misconduct. Plaintiff contends one of the jurors, George Dunson, intentionally failed to disclose that a claim had been made against the juror and his wife for property damages that resulted from an automobile accident involving a car his wife was driving.[3]

Plaintiff's attorney asked the jury panel during voir dire, "Has anybody made a claim against you, members of your family, or close friends, because of something they allege that you did, and you owe them money? Anybody been in that position?" The record reflects that plaintiff's attorney asked ques-

---

3. Conduct that constitutes intentional and nonintentional nondisclosure and the duty of a juror to respond truthfully to voir dire inquiry is explained in *Williams by Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36–37 (Mo. banc 1987).

tions to several of the panel members based on their having responded to his inquiry. Mr. Dunson was not questioned. He was selected to be a juror and was one of the nine jurors who signed the verdict in the case.

The trial court held a post-trial hearing on the allegation in plaintiff's motion for new trial that Mr. Dunson had been a passenger in a vehicle operated by his wife that ran a red light and damaged another vehicle; that a claim for damage to the other vehicle had been successfully made.

An employee of an insurance company testified that Mr. Dunson and his wife had been the named insured in a policy issued by her company; that a claim had been made against the Dunsons based on an accident in which a car driven by Mrs. Dunson was involved. Mr. Dunson had been a passenger in the car when the accident occurred. The insurance company representative told the court the claim was settled without a lawsuit being filed.

Mr. Dunson testified at the hearing. In response to questions by plaintiff's attorney, he told the trial court he understood the questions asked on voir dire were about whether anybody had a claim made against them even if the incident did not result in litigation. He testified that he knew a claim for property damage had been made as a result of the accident involving the car his wife was driving. He was asked, "But you didn't tell that to [plaintiff's attorney] or anybody else during the voir dire examination, did you?"

Mr. Dunson answered, "Well, I had my hand raised, but he just didn't get to me. Because he was asking different people. You know, I had my hand up, and he was just going around to different people."

On cross-examination Mr. Dunson said there were occasions during plaintiff's voir dire when he raised his hand that he was not called upon. Mr. Dunson was asked if the lawyer asking questions went on to a different topic after he had raised his hand. Mr. Dunson answered, "Yes, sir." He was then asked if he withheld any information or failed to respond when he heard a question from any of the lawyers which he thought applied to him. Mr. Dunson answered, "No, sir."

The trial judge denied plaintiff's motion for new trial. The judge's docket entry states, "Court finds that juror Dunson did not intentionally fail to disclose pertinent information." It is unclear from the docket entry whether the trial court concluded that Mr. Dunson unintentionally failed to disclose that there had been a claim made, or that Mr. Dunson unintentionally failed to disclose the specifics of a claim (after indicating there had been a claim) because he was not asked about it.

If Mr. Dunson raised his hand, he disclosed that a claim had been made. Failure to disclose specifics of the claim might be considered to have been unintentional since Mr. Dunson was not asked anything further. On the other hand, if Mr. Dunson did not raise his hand when he knew a claim had been made, he intentionally failed to disclose the claim.

The determination of whether Mr. Dunson raised his hand when asked if a claim had been made against him, members of his family or close friends is a credibility issue. The responsibility for making that determination belongs to the trial court. *Shafer v. Schuster*, 882 S.W.2d 310, 313 (Mo.App.1994). This case must be remanded for the trial court to enter its finding concerning whether George Dunson raised his hand when asked if a claim had been made against him, members of his family or close friends.

■ Defendants raise a further issue, however, concerning plaintiff's right to assert a claim of nondisclosure by George Dunson. They contend another part of the trial court's docket entry provides a basis for finding plaintiff waived her right to challenge Mr. Dunson's alleged nondisclosure. The trial court found, "Plaintiff had sufficient knowledge of the accident involving Mr. Dunson's wife that she could have made inquiry into juror Dunson's knowledge but elected not to do so. Accordingly, [the claim of nondisclosure] of plaintiff's motion for new trial is overruled."

Defendants' assertion of prior knowledge by plaintiff is based on information plaintiff

acquired prior to trial from a review of the backgrounds of prospective jurors. Plaintiff's attorney had knowledge that a person named Tena Dunson, who had a Neosho address, had been involved in a previous automobile accident. Tena Dunson is George Dunson's wife. However, plaintiff did not know of the marital relationship. Additionally, the record does not reflect plaintiff had information that the accident produced a claim against Tena Dunson.

■ Waiver of a claim of juror nondisclosure applies only when counsel had actual knowledge of the nondisclosed information or when that information was within materials in counsel's possession. *Rodenhauser v. Lashly,* 481 S.W.2d 231, 235 (Mo.1972). *See also, Woodworth v. Kansas City Public Service Co.,* 274 S.W.2d 264, 271 (Mo.1955); *Piehler v. Kansas City Public Service Co.,* 357 Mo. 866, 211 S.W.2d 459, 463 (1948). Plaintiff did not waive her right to assert the issue of juror nondisclosure by Mr. Dunson.

The case is remanded. The trial court is directed to enter its finding in writing as to whether George Dunson raised his hand in response to the question plaintiff asked on voir dire concerning whether a claim had been asserted against any of the prospective jurors, their family or close friends. The clerk of the Circuit Court of Newton County, Missouri, shall certify a copy of that finding and promptly transmit it to this court for filing as a supplemental legal file as permitted by Rule 81.12(e). This appeal shall be held in abeyance pending compliance with the directions on remand and the filing of a supplemental legal file herein.

MONTGOMERY, C.J., and BARNEY, J., concur.

## ADDENDUM TO OPINION FOLLOWING RESPONSE OF TRIAL COURT

■ This case was remanded for the trial court to enter a finding on a credibility issue that affects the disposition of this appeal. The appeal was held in abeyance pending that determination. The trial court was instructed "to enter its finding in writing as to whether George Dunson raised his hand in response to the question plaintiff asked on voir dire concerning whether a claim had been asserted against any of the prospective jurors, their family or close friends." George Dunson was a juror who served in the trial of the case.

The trial court complied with the directive. It stated it did not see Mr. Dunson raise his hand. However, it quoted from Mr. Dunson's testimony at a post-trial hearing on the allegation in plaintiff's motion for new trial that, during voir dire, Mr. Dunson intentionally failed to disclose a claim that had been made against his wife for property damage. The trial court concluded:

On the issue of credibility this Court finds that juror George Dunson did not lie when questioned at the post-trial hearing. Accordingly, this Court accepts as true the testimony of George Dunson given at the posttrial hearing.

Questions asked Mr. Dunson and answers given by him included:

Q. You understood a claim had been made against you, and your rates had gone up?

A. Yeah; yes, I guess.

Q. But you didn't tell that to Mr. Hershewe or anybody else during the voir dire examination, did you?

A. Well, I had my hand raised, but he just didn't get to me. Because he was asking different people. You know, I had my hand up, and he was just going around to different people

. . . .

Q. You didn't have your hand up whenever he asked that series of questions about anybody having made a claim against you, did you?

A. Yes; I had my hand up

. . . .

Q. You indicate that you raised your hand when questions were asked.

A. Yes, sir.

Q. And that there were occasions when you were not called upon even though you had your hand raised.

A. Yes, sir.

Q. And that the lawyer went on to a different topic?

A. Yes, sir.

Q. Did you withhold any information or fail to respond when you heard a question from any of the lawyers, whether it was Mr. Hershewe or not, which you thought applied to you?

A. No, sir

. . . .

Q. Did you raise your hand?

A. Yes, sir.

Q. Did they call on you?

A. No, sir

. . . .

Q. If they had called on you, you would have told them?

A. Yes, sir. I'm not trying to hold anything back or anything.

During voir dire, plaintiff's attorney sought responses to questions by requesting a show of hands by panel members. Mr. Dunson testified that he responded to the questions asked concerning claims made against him and his family members, but plaintiff's attorney did not ask him anything further.

According to the post-trial testimony that the trial court found credible, Mr. Dunson responded truthfully to questions asked. He, therefore, did not withhold information. There was no nondisclosure by him. The trial court did not err in denying plaintiff's motion for new trial based on plaintiff's allegation that Mr. Dunson intentionally failed to disclose that a claim had been made against him or his wife for property damage arising from an automobile accident. The judgment is affirmed.